IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 5, 2008

**STATE OF TENNESSEE v. CEDRIC RURON SAINE**

**Appeal from the Criminal Court for Davidson County**
**No. 2006-b-1714     Monte Watkins, Judge**

_____

**No. M2007-01277-CCA-R3-CD - Filed April 4, 2008**

_____

This is a State appeal from an order dismissing the indictment against the Defendant, Cedric Ruron Saine. The Defendant was indicted for possession with the intent to sell more than 300 grams of cocaine. The issue presented for our review is whether the trial court erred in granting the motion to suppress evidence seized from the Defendant's residence and vehicle or, more specifically, whether the search warrant affidavit contained sufficient facts to establish probable cause that drugs were located inside the Defendant's home and, if not, whether the warrantless search of the Defendant's car was supported by exigent circumstances. After a review of the record and the applicable authorities, we affirm the order of the trial court granting the Defendant's motion to suppress the evidence discovered during the search of his residence, but we reverse the decision to suppress the drugs found during the search of the Defendant's car. We vacate the order dismissing the indictment, and the case is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part;**
**Reversed in Part; Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

Daniel D. Warlick, Nashville, Tennessee, for the appellee, Cedric Ruron Saine.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Shannon Poindexter, Assistant District Attorney General, for the appellant, State of Tennessee.

**OPINION**

**Factual Background**

On June 26, 2006, a Davidson County grand jury indicted the Defendant for possession of more than 300 grams of cocaine with the intent to sell, a Class A felony. See Tenn. Code Ann. §

39-17-417. The indictment stemmed from drugs discovered during the May 2, 2006 search of the Defendant's car and residence.

Prior to trial, the Defendant filed a motion to suppress the evidence discovered during the search of his car and residence and statements made by him during his arrest. He argued that the search warrant for his residence was vague and not supported by probable cause:

> Initially, the officer seeking the warrant, Detective Marti[n] Roberts, relies upon allegations that, sometime in the 72 hours preceding the April 28, 2006 issuance of the warrant, an unidentified confidential informant negotiated the purchase of a quantity of cocaine. The alleged transfer of that cocaine did not take place at 3340 [Milbridge] Drive, but rather at an unidentified "pre-determined meeting location." It is nowhere alleged or inferred that the confidential informant, at any time, had been in or around 3340 [Milbridge] Drive or had seen drugs or paraphernalia at that location at any time prior to the issuance of that warrant. . . . Nowhere in the [a]ffidavit does Detective Roberts make a single reference to the Defendant, his premises, his habits, or behavior involving alleged narcotic trafficking.

As for his challenge to the search of his car, he contended that the search of his car, which was a "significant distance" away from his residence when he was stopped by officers, was not authorized by the search warrant and that the search was not justified on any other basis. He sought suppression of any statements made during the course of his arrest, arguing that he asked officers for an attorney prior to questioning but that officers continued to question him in violation of his constitutional rights.

A hearing on the motion was held on March 9, 2007.[1] The search warrant and affidavit in support of the search warrant were introduced as an exhibit. The probable cause portion of the affidavit provided as follows:

> Within the past 72 hours, a reliable confidential informant (hereinafter referred to as CI), who your affiant knows to be reliable based on past exposure to narcotics. Your affiant has verified such information relating to the CI and the CI's statements relating to past exposure. The CI also provided your affiant with information relating to individuals in the Nashville area that are known cocaine dealers. One of the individuals who the CI knows that sells various amounts of cocaine in the Nashville area is an individual known as "Ced". Your affiant was able to verify the information that was provided regarding "Ced" aka Cedric Saine (hereinafter referred to as Ced).

---

[1] The transcript of the motion to suppress hearing reflects that the hearing occurred on April 9, 2007. However, based upon the date provided in the order denying the motion which was signed by the trial judge on March 28, 2007, and filed on the same day, it appears that the hearing actually took place on March 9.

The CI at your affiant's direction contacted an individual known to the CI as "Ced" and negotiated the purchase of a quantity of cocaine. Based on the negotiations between the CI and "Ced", the exchange of money and cocaine was to take place in the Nashville Davidson County area. Prior to the meeting between the CI and "Ced", the CI's vehicle and the CI's person were searched for contraband. As a result of the search, no contraband was found. Your affiant provided the CI with previously photocopied United States currency in which to purchase the quantity of cocaine. Recording and transmitting equipment was used to monitor and record the meeting between the CI and "Ced".

Your affiant followed the CI to the area where the meeting was to take place between the CI and "Ced". Detectives assigned to surveillance, set up in the area of 3340 Milbridge Drive and in the area where the CI and "Ced" were going to meet to cover the meeting between the CI and "Ced". Detectives set up in the area of 3340 Milbridge Drive observed a male black (later identified as Cedric Saine) leave 3340 Milbridge Drive, driving a black Infinity (TN License JEH 041 registered to Cedric Saine at 3340 Milbridge Drive). Detectives followed the black Infinity as the vehicle traveled from 3340 Milbridge Drive to the meeting place to meet the CI. Your affiant observed and monitored the meeting that took place between the CI and "Ced". After the brief meeting between the CI and "Ced", your affiant followed the CI to a pre-determined meeting location. Detectives assigned to surveillance followed "Ced" driving the black Infinity from the meeting spot back to 3340 Milbridge, where "Ced" was observed getting out of the Infinity and going into 3340 Milbridge Drive.

Your affiant followed the CI to a pre-arranged meeting location and debriefed the CI regarding the meeting with "Ced". Your affiant recovered from the CI one plastic bag containing a white powder substance consistent with powder cocaine. The CI's person and the CI's vehicle were searched for contraband and as a result of the search, no contraband was found. The plastic bag containing the white powder substance weighed [in] excess of 50 grams and tested positive for cocaine HCL. The plastic bag containing the white powder substance was later turned in to the Property and Evidence Section of the Metropolitan Nashville Police Department by your affiant; where it will be submitted to the Tennessee Bureau of Investigation Laboratory for chemical analysis.

On April 27, 2006, your affiant checked the Nashville Electric Service database, which reflects that 3340 Milbridge Drive, Antioch, Davidson County, Tennessee 37013 has electric service in the name of Samantha R. Saine, DOB 02-03-76, SSN (redacted). The same database reflects that the date of turn-on of electric service to the location was 09-07-04.

The affidavit also described the items to be seized and detailed the detective's extensive experience and training in narcotics transactions. A search warrant, signed by the magistrate on April 28, 2006, was issued for the Defendant's residence.

At the suppression hearing, narcotics detective Martin Roberts of the Nashville Metropolitan Police Department, Special Investigations Division, testified that, in April 2006, officers were conducting surveillance of the Defendant's residence. During several controlled sales of drugs, they observed the Defendant leave his residence, travel to a prearranged meeting place, sell drugs to a confidential informant, and then return to his residence. Following one such controlled purchase, Detective Roberts obtained a search warrant for the Defendant's residence.

Detective Roberts opined that the drug sales were associated with the Defendant's residence. When the Defendant met with the confidential informant, he was driving an Infiniti automobile. Detective Roberts checked the registration of the vehicle, which revealed the Defendant as the owner of the vehicle and listed his Milbridge Drive address. According to Det. Roberts, individuals who "make a sale like that generally then will have apparatus of drug dealing or in fact drugs stored somewhere in their house[.]" To Det. Roberts' knowledge, the confidential informant had never visited the Defendant's residence or observed any narcotics at the residence.

Detective Roberts acknowledged that the confidential informant had made several "controlled buys" from the Defendant but that only one purchase was included in the affidavit. He also admitted that the purchase referred to in the affidavit was made seventy-two hours before the search warrant was issued and that the warrant was not executed until four days (May 2, 2006) after it was issued. Detective Roberts confirmed that the search warrant authorized only the search of vehicles and persons "with close proximity" and "with a nexus" to the Defendant's home.

On May 2, officers arranged another controlled purchase between the Defendant and the confidential informant for a "quarter kilo" of cocaine. Officers established surveillance of the Defendant's residence prior to the time of the prearranged sale.

The Defendant was observed leaving his home. Thereafter, Officer Roy Michael Lee of the Metropolitan Nashville Police Department "clocked" the Defendant driving forty-five miles per hour in a thirty-five-mile-per-hour speed zone (which Officer Lee acknowledged was not posted in the area). Officer Lee then stopped the Defendant, who was "within two miles" of his residence, for speeding. Officer Mark Chestnut of the Metropolitan Nashville Police Department assisted Officer Lee with the traffic stop.

After the Defendant was stopped, he was placed in the back of a patrol car; he agreed to sit inside the vehicle. According to Officer Lee, while the Defendant was not under arrest at this time, he was not free leave.

Officer Lee asked the Defendant if he could search the vehicle, and the Defendant responded in the negative. A canine sweep was conducted of the vehicle, and the canine did not indicate the

presence of contraband in the vehicle. Thereafter, officers searched the car. Following the search of the Defendant's vehicle, officers found a "quarter kilo" of cocaine and a small quantity of marijuana.

Officer Lee was aware that the search warrant was "soon" to be executed at the Defendant's residence. He also testified that, prior to stopping the Defendant for speeding, officers had the confidential informant "order up some more narcotics" and that the Defendant "was supposed to be delivering it to him." The Defendant did not receive a citation for speeding.

Detective Roberts, knowing the search warrant was to be executed, arrived on the scene of the traffic stop. Detective Roberts stated that he informed the Defendant of his Miranda[2] rights, and the Defendant advised that he understood them. When asked where he was coming from and going to, the Defendant answered that he had just come from his girlfriend's house and was going to Wal-Mart. According to Detective Roberts, he asked questions designed to gauge the Defendant's truthfulness, and the Defendant "made some truthful statements and some not truthful." Detective Roberts stated that the Defendant did not request an attorney and that the Defendant assisted the officers with locating several items in the residence. According to Det. Roberts, the Defendant "acknowledged" that drugs were present in the car.

Regarding the grounds supporting the search of the Defendant's car, the officers gave varying testimony. Detective Roberts stated that the search warrant did not authorize stopping the car. When he was asked if the warrant authorized the search of the car a mile away from the house, he responded, "It authorized the search of the vehicle. Correct. But associated with the traffic stop." Officer Lee gave the following basis for searching the car: "The information I received from detectives, that they had bought drugs from him before, that he was supposed to be delivering drugs at that point." Officer Lee admitted that, regardless of whether the Defendant committed a traffic violation, he was going to stop the Defendant "anyway." Officer Lee later stated that his basis for stopping the Defendant was because the Defendant "was to be held pursuant to [the] search warrant[.]" He then stated that he did not search the vehicle pursuant to the search warrant but because he believed the Defendant to be in the process of delivering narcotics. Officer Chestnut stated that the search of the vehicle was conducted pursuant to the search warrant.

The warrant was executed on the Defendant's residence following the traffic stop of the Defendant. Detective Roberts testified that he was present when the search warrant was executed and that, in the course of that execution, officers discovered approximately a kilogram of cocaine, digital scales, drug paraphernalia "associated with the processing of cocaine[,]" and several handguns.

On March 28, 2007, the trial court, by written order, granted the Defendant's motion to suppress the evidence seized from his residence and car, concluding that the search warrant was not

---

[2] See Miranda v. Arizona, 384 U.S. 436, 479 (1966).

supported by probable cause and, additionally, that the vehicle was not in "close proximity" to the residence and thus not covered by the search warrant.[3]  The trial court reasoned as follows:

> [T]he present affidavit does not state with any particularity the confidential informant's knowledge.  In fact, nowhere in the affidavit does the affiant allege that information was obtained from the [confidential informant] to indicate that the sale or exchange took place at the [D]efendant's home which was the place to be searched nor that the [confidential informant] observed or knew that drugs were located at the [D]efendant's home.  Therefore, the nexus between the pre-arranged drug sale at an undisclosed location in which the confidential informant never sees or discusses the possession or sale of a controlled substance at the [D]efendant's home is insufficient to establish a finding of probable cause.

Thereafter, on May 17, 2007, the trial court entered an order dismissing the indictment.  The order reads as follows: "Came the Office of the District Attorney General, prosecuting on behalf of the State of Tennessee and advised the [c]ourt that in light of the [c]ourt's decision to grant the Defendant's Motion to Suppress, it is unable to proceed with prosecution of this matter due to insufficient evidence."  The State then filed its Rule 3, Tennessee Rules of Appellate Procedure, notice of appeal from this order.  It is the decision granting the motion to suppress, not the decision dismissing the indictment, with which the State takes issue on appeal.

## ANALYSIS

### I.  Rule 3 Appeal

At the outset, we note the procedural problems with this appeal as pointed out by the Defendant in his brief.  The State, by seeking dismissal of the indictment, was apparently attempting to obtain a final appealable order pursuant to Rule 3, Tennessee Rules of Appellate Procedure.  However, such was not necessary to permit an appeal of the order of suppression.

Rule 3 of the Tennessee Rules of Appellate Procedure provides for the availability of an appeal as of right by the State in criminal actions:

> In criminal actions an appeal as of right by the state lies only from an order or judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint; (2) setting aside a verdict of guilty and entering a judgment of acquittal; (3) arresting judgment; (4) granting or refusing to revoke probation; or (5) remanding a child to the juvenile court.  The state

---

[3] The trial court did not address the issue regarding the suppression of statements made by the Defendant.  This issue is not addressed in the briefs filed herein.  Therefore, this Court also declines to address any issue regarding suppression of any statements made by the Defendant.

may also appeal as of right from a final judgment in a habeas corpus, extradition, or post-conviction proceeding.

Tenn. R. App. P. 3(c). The primary limitation placed upon the State's right to appeal is that it may not appeal a judgment of acquittal. Tenn. R. App. P. 3, Advisory Commission Notes. In addition, appeals as of right for the State lie only in those circumstances specified in subdivision (c). Id.

We conclude that the order of suppression was, in fact, dispositive and, thus, the order had the substantive effect of dismissing the indictment against the Defendant. See State v. Randy Lee Meeks and Ernest Lonnie Snyder, Jr., No. M2006-01385-CCA-R3-CO, 2007 WL 1987797, at *4 (Tenn. Crim. App., July 10, 2007), perm. to appeal granted, (Tenn. Dec. 17, 2007). Therefore, we conclude that this is a suitable case for a State appeal as of right from the suppression order under Tennessee Rule of Appellate Procedure 3(c) and will treat and consider the case as such.

The order of suppression was an appealable order under Rule 3, and a notice of appeal should have been filed directly from that order. In order to address the merits of the motion to suppress decision, we waive any procedural deficiencies in the interests of justice, including the timely filing of the notice of appeal. See Tenn. R. App. P. 4(a); see, e.g., State v. Kirk Williams, No. E2004-01452-CCA-R3-CD, 2005 WL 762601, at *2 (Tenn. Crim. App., Knoxville, Apr. 5, 2005) (citing State v. Brown, 898 S.W.2d 749 (Tenn. Crim. App. 1994); State v. Stephen Udzinski, Jr., No. 01C01-9212-CC-00380, 1993 WL 473308 (Tenn. Crim. App., Nashville, Nov. 18, 1993)), rev'd on other grounds, 185 S.W.3d 311 (Tenn. 2006).

## II. Motion to Suppress

The substance of this appeal is the State's complaint that the trial court committed error in granting the Defendant's motion to suppress the evidence recovered from his home and car. Specifically, the State contends that the affidavit, which relied exclusively upon information personally gathered by Det. Roberts and not supplied by a confidential informant, was sufficient to establish probable cause to search the Defendant's residence. Regarding the search of the Defendant's car, the State contends that a warrantless search of the vehicle was proper because the officers knew the Defendant was in the process of delivering cocaine to the confidential informant.

The Defendant, relying on the trial court's ruling and citation to State v. Harvill Gilbert, No. 01C01-9311-CC-00383, 1995 WL 89697 (Tenn. Crim. App., Mar. 3, 1995), contends that there was no nexus between the prearranged drug sale at an undisclosed location and the Defendant's home sufficient to establish a finding of probable cause:

What the State would have the trial court and this Court do is find that any individual making a controlled sale or buy of contraband has his/her [constitutional rights] abrogated and held for naught based upon an officer's personal opinion that every aspect of the purported criminal's life is fraught with illegal dealing, thereby

-7-

allowing a search of each and every location where he may have been or an "experienced officer" might believe that drugs could be.

As for the search of the car following the traffic stop, the Defendant argues that the search of his car was unlawful because the officers created the exigent circumstances by setting up the controlled sale of drugs. Thus, he argues that none of the evidence seized from his home or car was admissible at trial.

When reviewing a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Findings of fact made by a trial court in ruling on a motion to suppress are binding upon this court unless the evidence preponderates against the findings. See id. However, "[t]he application of the law to the facts found by the trial court . . . is a question of law which this court reviews de novo." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth Amendment, provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated. No warrant shall issue but upon probable cause supported by oath or affirmation and particularly describing the place to the searched and the person or things to be seized.

Article 1, section 7 of the Constitution of Tennessee also guarantees that the people shall be free from unreasonable searches and seizures.

## A. Search of the Defendant's House

An affidavit has historically been viewed as an indispensable prerequisite to the issuance of a search warrant in Tennessee. See Tenn. Code Ann. § 40-6-103. The affidavit must set forth on its face facts which establish probable cause before a search warrant may issue. See Tenn. Code Ann. § 40-6-104; Tenn. R.Crim. P. 41(c). Probable cause to support the issuance of the warrant must appear in the affidavit, and judicial review of the existence of probable cause will not include looking to other evidence provided to or known by the issuing magistrate or possessed by the affiant. State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Also, essential to the process of obtaining a search warrant is the requirement that the affidavit recite sufficient underlying facts and circumstances to enable the issuing magistrate to perform his detached function and not serve merely as a rubber stamp for the police. State v. Abernathy, 159 S.W.3d 601, 603 (Tenn. Crim. App. 2004) (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)).

If the information upon which probable cause is based is not of the officers' personal knowledge, but is received from an informant, probable cause under our state constitution is

determined by the application of the *Aguilar-Spinelli* two-pronged test. State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989). That test requires the establishment of the basis of knowledge and the veracity of the informant supplying hearsay information. Id. at 432. The basis of knowledge prong requires that the affidavit contain facts from which the magistrate may determine that the informant had a basis for the claim regarding criminal conduct or contraband. Id.; see also Moon, 841 S.W.2d at 338. The veracity prong requires that the affidavit contain facts from which the magistrate may determine either the inherent credibility of the informant or the reliability of the information provided. Jacumin, 778 S.W.2d at 432; see also Moon, 841 S.W.2d at 338.

A search warrant for a particular place must be supported by an affidavit establishing probable cause to believe that the evidence sought is located in a particular place. Gilbert, 1995 WL 89697, at *3. In State v. Longstreet, 619 S.W.2d 97 (Tenn. 1981), the supreme court, quoting from the Court of Criminal Appeals's opinion in the case, said that "facts providing a nexus between the crime and the [place] to be searched are a critical element that must be included in the affidavit." 619 S.W.2d at 99 (citing Whiteley v. Warden, 401 U.S. 560, 565-66 (1971)). However, the nexus "may be established by the type of crime, the nature of the items, and the normal inferences where a criminal would hide evidence," as long as those inferences are based on facts set forth in the affidavit. State v. Smith, 868 S.W.2d 561, 572 (Tenn.1993).

The trial court here cited to relevant precedent—Gilbert, 1995 WL 89697, wherein this Court reviewed the relevant case law in this jurisdiction and others on the issue. The Gilbert Court "rejected a per se rule that if a person is determined by the magistrate to be a drug dealer, probable cause is shown to search that person's residence." 1995 WL 89697, at *5 (citing State v. Silverstri, 618 A.2d 821, 824 (N.H. 1992)). In support of the conclusion that the required nexus was insufficient to support a finding of probable cause, the Gilbert Court noted two Pennsylvania cases addressing factual scenarios remarkably similar to the facts in Gilbert and in the present case:

> In Commonwealth v. Kline, 234 Pa. Super. 12, 335 A.2d 361 (Pa. Super. 1975), a warrant to search defendant's apartment for drugs was based in part on information that an individual had made a street sale of LSD to two young women. In concluding that the affidavit in support of the warrant was insufficient, the court said:
>
> > Here, as far as appears from the affidavit, none of the informants said where the LSD was. The girls apparently concluded that it was in [defendant's] apartment. However, an affidavit must set forth how information leading to such a conclusion was obtained. . . . *There is no indication of where the transaction took place, how long it took, how long [defendant] was gone, or what led the girls to conclude that he had gone to his apartment.* The information from the confidential informant does not corroborate their conclusion that [defendant] kept drugs in his apartment, even though it does tend to establish that [he] was a drug dealer.

Id. at 364 (emphasis added).  The court further explained:

> Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home.  [The trial judge] stated the matter well in his memorandum opinion: 'In our opinion an allegation based on an assumption or a supposition not supported by the facts is insufficient to support [an inference of] criminal activity in a premises, in spite of the fact that there are plenty of allegations alleged to relate to criminal activity of the individual who is alleged to have lived in the premises.

Id.

> The Pennsylvania court followed Kline in Commonwealth v. Way, 342 Pa. Super. 341, 492 A.2d 1151 (Pa. Super. 1985), a case in which the affidavit alleged that an informant engaged in a drug transaction with defendant in a blue van.  After the transaction, police followed the van to an address identified as defendant's.  The court held that the affidavit did not contain facts to warrant a belief that drugs would be found on defendant's premises.  The Court said that "[p]robable cause to believe that a person has committed a crime does not give rise to probable cause to search his house."  Id. at 1154.  Cf. Commonwealth v. Davis, 407 Pa. Super. 415, 595 A.2d 1216, 1221 (Pa. Super. 1991) (adhering to the rule in Kline but upholding search warrant because facts in affidavit included sale and possession of drugs in the home of defendant).

Gilbert, 1995 WL 89697, at *4-5 (emphasis in original).

In our view, this issue should be resolved in accordance with this Court's decision in Gilbert. We must conclude that the affidavit did not contain sufficient facts to establish probable cause to believe that drugs would be found inside the Defendant's residence.  The affidavit contains no facts regarding the location of the Defendant's drugs but only an inference from Det. Roberts that the drug sales were associated with the Defendant's residence.  Neither the confidential informant nor Det. Roberts witnessed criminal activity at the Defendant's house.  To Det. Roberts' knowledge, the confidential informant had never visited the Defendant's residence or observed any narcotics in the residence.  The lack of a substantial nexus between the controlled sale and the premises to be searched renders the warrant facially invalid.  Accordingly, the trial court did not err by granting the Defendant's motion to suppress the drugs discovered at his home.

## B.  Search of the Defendant's Vehicle

Next, we must address whether the warrantless search of the Defendant's vehicle was justified by exigent circumstances.  The State argues that the search was permissible in accordance with the automobile exception to the warrant requirement: "When [the officers] stopped the

[D]efendant, they knew the [D]efendant had previously sold cocaine to a confidential informant, and they knew that another drug transaction was underway at that moment and the [D]efendant was delivering cociane [sic] to the confidential informant." The Defendant counters that the search of his car was improper because the officers created the exigent circumstances by setting up the controlled sale of drugs.

Under both the federal and state constitutions, warrantless searches are presumed unreasonable, and evidence obtained from such a seizure should be suppressed unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. See Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); Yeargan, 958 S.W.2d at 629. One such exception to the warrant requirement is the "automobile exception." Under the automobile exception, an automobile may be searched without a warrant if an officer has probable cause to believe that the vehicle contains contraband and if exigent circumstances require an immediate search. State v. Leveye, 796 S.W.2d 948, 952 (Tenn. 1990). The rationale for the automobile exception is two-fold: (1) the impracticability of obtaining a search warrant in light of the inherent mobility of an automobile; and (2) the reduced expectation of privacy with respect to one's automobile. California v. Carney, 471 U.S. 386, 390-93 (1985); South Dakota v. Opperman, 428 U.S. 364, 367 (1976). If the police have probable cause to believe that an automobile contains contraband, the officers may either seize the vehicle and then obtain a warrant or they may search the vehicle immediately. Chambers v. Maroney, 399 U.S. 42, 52 (1970). "[T]he right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." Reagan v. State, 525 S.W.2d 683, 686 (Tenn. Crim. App. 1974) (citing Chambers, 399 U.S. at 49).

Therefore, to decide whether the search conducted in this case meets the automobile exception, we must determine whether the officers had probable cause to believe that the car the Defendant was driving contained contraband. Again we note that, in determining whether probable cause exists to make a warrantless search of an automobile based on an informant's tip, the State must establish (1) that the informant had a basis for his or her information that a person was involved in criminal conduct and (2) that the informant is credible or that his or her information is reliable. Jacumin, 778 S.W.2d at 436. "[W]here a tip fails under either or both of the two prongs, probable cause may still be established by independent police investigative work that corroborates the tip to such an extent that it supports the inference that the informant was reliable and that the informant made the charge on the basis of information obtained in a reliable way." State v. Bridges, 963 S.W.2d 487, 491 (Tenn. 1997). In addition, "[p]robable cause need not rest on an informant's tip alone, but may be supplemented by direct observation by the officers or a combination of the two." State v. Shrum, 643 S.W.2d 891, 894 (Tenn. 1982).

The informant in the present case had previously cooperated with the police and had provided Det. Roberts with information relating to individuals in the Nashville area who were known cocaine dealers. Detective Roberts had observed the informant and the Defendant exchange drugs for money on prior occasions. Officers arranged for another controlled purchase on May 2 between the

Defendant and the informant for a "quarter kilo" of cocaine and established surveillance of the Defendant's residence prior to the prearranged meeting. In addition, Det. Roberts noted that, following the traffic stop, the Defendant was untruthful in answering questions. The informant's communication arranging a sale on May 2, prior police investigation of the Defendant, and the untruthfulness of the Defendant to questions asked by officers provided probable cause that the vehicle searched in this case contained contraband. See, e.g., State v. Damon L. Baugh, No. M2001-00895-CCA-R3-CD, 2002 WL 31202127, at *4-5 (Tenn. Crim. App., Nashville, Sept. 27, 2002). Additionally, we note that Det. Roberts stated the Defendant "acknowledged" that drugs were present in the vehicle.

As for the Defendant's argument that the officers created the exigent circumstances by setting up the controlled sale and that the subsequent search of his car was unconstitutional, we disagree. See generally State v. Hendrix, 782 S.W.2d 833, 836-37 (Tenn. 1989) (following telephone call by police to Hendrix residence warning that police were on their way, Hendrix, Jr. and Mashke drove away from residence in a Lincoln Continental automobile; this Court held that "exigent circumstances occurred when the automobile . . . turned into a darkened, shrub obscured driveway, . . . on property in which neither had a proprietary interest"). But cf. State v. Gilbert Russ, No. 01C01-9306-CR-00183, 1995 WL 270924, at *3 (Tenn. Crim. App., Nashville, May 4, 1995) (in case where informant arranged sale of cocaine from defendant, defendant arrived at meeting place and exited his vehicle, officers then searched defendant and his car, this Court held that officers should have secured a search warrant). "It has long been held that some deception on the part of the police is constitutionally permissible." Hendrix, 782 S.W.2d at 835. "[G]overnment agents may engage in conduct that is likely, when objectively considered, to afford a person ready and willing to commit the crime an opportunity to do so." Id. at 836 (quotation omitted). The Defendant, activated by his own decision, left his residence in his vehicle to drive to the prearranged meeting place in order to sell drugs to the confidential informant. No illegality exists regarding the search of the vehicle. We hold that the search of the Defendant's automobile was constitutional and reverse the trial court's decision to suppress the drugs recovered inside the car.

**CONCLUSION**

Accordingly, the judgment of the trial court granting the Defendant's motion to suppress is affirmed in part and reversed in part. The order dismissing the indictment is vacated, and this case is remanded for further proceedings consistent with this opinion.

_____
DAVID H. WELLES, JUDGE

-12-