J-S11016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRUCE M. REESE | |
| Appellant | No. 52 EDA 2013 |

Appeal from the Judgment of Sentence of November 20, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0013539-2011

BEFORE:  BENDER, P.J.E., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:  **FILED AUGUST 06, 2014**

Bruce M. Reese appeals his November 20, 2012 judgment of sentence. For the reasons that follow, we vacate Reese's judgment of sentence, and we remand for a new trial consistent with this memorandum.

The underlying incident in this case occurred late in the evening on November 11, 2011.  On that date, the three complainants in this case — Darren Harrison, Ian White, and Bryan Shoecraft — were robbed at the intersection of 57th and Belmar Streets in Philadelphia, Pennsylvania. Sometime after 11:00 p.m., Harrison and White were sitting in Harrison's car, which was parked at the aforementioned intersection and outside of the home of their mutual friend, Keith Nazario.  Trial Court Opinion ("T.C.O."),

_____

[*]    Retired Senior Judge assigned to the Superior Court.

7/31/2013, at 5-7. Specifically, Harrison and White were utilizing Nazario's wireless Internet signal to watch a video in the vehicle. *Id.* At approximately 11:55 p.m., Shoecraft arrived at Nazario's home "to pick up some items left there by another friend." *Id.* at 8. Shoecraft and Nazario exited the residence, and engaged Harrison and White in conversation, when they noticed the men sitting in the vehicle. *Id.* at 5, 7-8.

While the men were gathered at Harrison's vehicle, Reese approached Harrison's car "from across the street." *Id.* at 8. Reese accosted Nazario and demanded that he hand over "everything," while making a "reaching motion into his jacket as if he had a gun." *Id.* Reese proceeded to pat Nazario down, "searched [Nazario's] pockets and found nothing." *Id.* Thereafter, Reese pulled out a black handgun and "whipped" Harrison's door with it, demanding that Harrison also give him "everything." *Id.* at 6, 9. Reese then opened Harrison's door and aimed the gun at him, repeating his earlier demand. *Id.* at 5-7, 9. "While holding the gun on [Harrison, Reese] called and signaled to a second man to come to assist him." *Id.* at 9. After his unidentified accomplice arrived at the car, Reese collected $90.00 in cash from Harrison and White, and gave it over to his accomplice. *Id.* at 6, 9. Meanwhile, the accomplice patted down Shoecraft, seized Shoecraft's wallet and emptied it of valuables and $2.00. *Id.* at 9. The accomplice also emptied White's wallet, and discarded both wallets onto the ground. *Id.* at 7, 9.

At this point, Harrison recognized Reese "as being the cousin of a friend he had grown up with," and asked if Reese was related to a person named Kyle. *Id.* at 6. Reese acknowledged that he knew Kyle, *id.* at 6, and asked how much money he and his accomplice had taken from Harrison and his friends. *Id.* at 7. Reese then asked his accomplice to return the money, but the second man refused to do so. Reese then "proffered his phone number" and promised to return the stolen money the next day.[1] Reese and his accomplice "then left the scene together." *Id.* at 6.

> [Upon] returning home, [Shoecraft] immediately called the police to report the theft. Police officers came to his home, took him to the scene [of the robbery] and then to the Southwest Detectives [D]ivision of the Philadelphia Police Department where he was interviewed by Detective [Frank] Mullen. At approximately 2:32 a.m. [on November 12, 2011], after giving his statement, [Shoecraft] viewed a line-up of potential suspects without any results.

T.C.O. at 9. Meanwhile, apparently "[a]nticipating the return of his money, [Harrison] did not contact the police until 9:00 a.m. the following morning, November 12, 2011." *Id.* at 6.

"At the request of [Detective Mullen, Harrison and White] met with him [on] the morning of November 13[, 2011]. After taking [Harrison's] formal statement, including a description of [Reese], Detective Mullen generated a photo array on his computer screen. [Harrison] immediately identified

---

[1] Apparently, none of the three complainants could recall Reese's putative phone number. T.C.O. at 6 n.3.

[Reese's] picture from this array[.]" ***Id.*** at 6-7. Specifically, Harrison testified at trial that he immediately recognized Reese and told Detective Mullen, "That's him right there." Notes of Testimony—Trial I ("N.T. Trial I"), 10/2/2012, at 72. White similarly identified Reese in a separate interview:

> [White] testified that [early in the morning on November 13, 2011,] Harrison called him and took him to the police station where he was interviewed by a detective other than Detective Mullen. After signing his statement at 3:25 a.m.[, White] positively identified [Reese] from a previously prepared photo array [by] circling [Reese's] picture and writing on it[:] "He's the guy with the gun."

T.C.O. at 8. "The following evening, Detective Mullen, accompanied by a Detective Horn, went to [Shoecraft's] home. [O]n being shown the array, [Shoecraft] immediately and without hesitation identified [Reese] as 'one of the males who robbed him.'" ***Id.*** at 11.

> Based on these identifications, a search warrant was prepared by [D]etective Horn for [Reese's] last known address. [Upon] executing the warrant at 7:05 a.m. on the morning of November 14, 2011, [Reese] "was found laying [*sic*] on a sofa-like piece of furniture." After taking [Reese] into custody "a black [semi-automatic] handgun" was found under the cushion [Reese] had been lying on. Although it appeared to be real, it was later discovered that the gun was not a "real gun."[2] Detective Mullen testified that, in addition to the gun, several pieces of mail addressed to [Reese] at that address were also recovered.

***Id.*** Thereafter, Reese was arrested:

> On November 14, 2011, [Reese] was arrested and charged with numerous offenses, including[,] *inter alia*[:] (1) [f]our counts of robbery — threatens serious bodily injury pursuant to 18 Pa.C.S.

---

[2] In fact, the gun was a "starter's pistol." Brief for Commonwealth at 2.

§ 3701(a)(1)(ii); (2) [o]ne count of criminal conspiracy pursuant to 18 Pa.C.S. § 903(C); and (3) [o]ne count of possession of an instrument of crime with intent pursuant to 18 Pa.C.S. § 907(a).

*Id.* at 1-2 (citations modified).

"Prior to the commencement of trial, [Reese's counsel] moved to suppress the evidence against [Reese] obtained as a result of the search warrant, arguing that there was insufficient evidence in the affidavit of probable cause to justify a search of [Reese's] residence." *Id.* at 13. Reese "also argued that the evidence should be suppressed because the affiant misstated [Reese's] address in the affidavit of probable cause as being 413 N. Edgewood Street." *Id.* at 14. The trial court denied Reese's suppression motion, and trial commenced on October 2, 2012. N.T. Trial I at 30.

> On October 5, 2012, at the conclusion of his jury trial, [Reese] was found guilty on all counts of robbery, one count of [criminal] conspiracy[,] and one count of possession of an instrument of crime. For the purposes of sentencing, the [trial court] broke the robbery charges into two separate groups. On the first two robbery counts[, Reese] was sentenced on each charge to concurrent periods of confinement in a state correctional facility of [five] to [ten] years. On the second [set of] robbery counts[, Reese] was also sentenced on each charge to concurrent periods of confinement in a state correctional facility of [five] to [ten] years, to run consecutively to the first two [robbery] sentences, for a total period of incarceration on [all of] the robbery charges of ten to twenty years. [Reese] was also sentenced to two consecutive periods of confinement in a state correctional facility of [two and one-half] to [five] years each on the counts of conspiracy and possession of an instrument of crime, for a total period of incarceration of [five] to [ten] years on these two charges. These sentences [were set] to run consecutively to the sentences on the robbery charges. Thus, [Reese] was sentenced to a total period of confinement of [fifteen] to [thirty] years. [Reese] was also ordered to pay restitution to two of his victims in the total amount of $108.

On December 10, 2012, [Reese] timely filed the instant appeal to the Superior Court of Pennsylvania.[3] [On] December 13, 2012, [a]ppellate [c]ounsel was appointed to represent [Reese] for the purposes of this appeal. On January 3, 2013, [the trial court] filed and served on [Reese] an Order pursuant to [Pa.R.A.P. 1925(b)], directing [Reese] to file and serve a Statement of Errors Complained of on Appeal, within [twenty-one] days of the [trial court's] Order. On January 22, 2013[,] Reese timely filed his "Request for Extension of Time to File his Statement of [Errors U]pon Receipt of All Notes of Testimony." On January 22, 2013, the [trial court] granted [Reese's] petition [and directed Reese] to file and serve a [Rule 1925(b) statement] within 21 days of the receipt of all notes of testimony.

\*    \*    \*

On May 14, 2013, [Reese] timely filed his [Rule 1925(b) statement].

T.C.O. at 2-3 (citations and capitalization modified, parentheses added). On July 31, 2013, the trial court filed its Rule 1925(a) opinion.

Reese raises the following issues for our consideration:

1.  Did the [trial] court err by denying [Reese's] pre-trial motion to suppress evidence based on a lack of probable cause where the affidavit of probable cause for the issuance of the warrant did not provide sufficient information for the issuing court to make a determination of probable cause?

_____

3  Reese's sentencing hearing was held on November 20, 2012, and Reese's sentencing order was entered by the trial court that same day. **See** Amended Order of Sentence, 11/20/2012, at 1. Therefore, Reese's December 10, 2012 notice of appeal was filed timely. **See** Pa.R.A.P. 903(a) ("[T]he notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken.").

2.    Was the evidence insuf[f]icient to establish a reliable identification of [Reese] as being involved in the commission of the crimes he was convicted of committing?

Brief for Reese at 2.

We begin our analysis by addressing Reese's second issue, which challenges the sufficiency of the evidence adduced by the Commonwealth. Specifically, Reese contends that this evidence was insufficient to establish his identity as one of the perpetrators of the robbery:  "The testimony in this matter is clear that no complaining witness . . . claimed to have previously known [Reese], or [to] have interacted with him. . . .  [A]t no time during the robbery did any witness state that [Reese] had been identified by name."  Brief for Reese at 12-13.  Thus, Reese argues that the evidence was insufficient positively to identify him.  We disagree.

Our standard of review in this context is well-established:

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt.  ***Commonwealth v. Heberling***, 678 A.2d 794, 795 (Pa. Super. 1996) (citing ***Commonwealth v. Williams***, 650 A.2d 420, 424 (Pa. 1994)).  In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. ***Commonwealth v. Cassidy***, 668 A.2d 1143, 1144 (Pa. Super. 1995). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

> Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. ***Commonwealth v. Valette***, 388, 613 A.2d 548, 549 (Pa. 1992).

***Commonwealth v. Vetrini***, 734 A.2d 404, 406–07 (Pa. Super. 1999) (citations modified). This Court specifically has discussed the sufficiency standards, in the context of identity, as follows:

> Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction. The evidence of identification, however, needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence.

***Commonwealth v. Hickman***, 309 A.2d 564, 566 (Pa. 1973) (citations omitted). Additionally, in the sufficiency context, "[t]he possible bias of the witnesses and the circumstances surrounding their opportunities to see their . . . assailant [are] questions for the jury." ***Id.***

Instantly, Reese was positively identified by Harrison, White, and Shoecraft during their initial interactions with the Philadelphia Police Department. T.C.O. at 5-8, 10-11. Furthermore, all three men testified at trial that Reese was one of the perpetrators of the robbery. ***See*** N.T. Trial I at 50 (Harrison identifying Reese in the courtroom); Notes of Testimony— Trial II ("N.T. Trial II"), 10/3/2012, at 18, 125 (Shoecraft and White,

respectively, identifying Reese in the courtroom). These identifications clearly constituted sufficient evidence to establish Reese's identity.

Reese argues that inconsistencies in the respective descriptions of Reese at the time of the robbery should invalidate the complainants' identification. **See** Brief for Reese at 14 ("Depending on who was testifying, [Reese] was either wearing a hoodie, a vest, a jacket, or a white Muslim dress, or thobe."). Even assuming, *arguendo*, that the witnesses' respective identifications differed somewhat in describing Reese, such questions of credibility are committed to the jury for resolution. **Vetrini**, *supra*. In convicting Reese, the jury clearly found the identifications of Harrison, Shoecraft, and White to be credible. **See Hickman**, *supra*. Thus, we conclude that Reese's sufficiency challenge is without merit.

We turn now to Reese's challenge to the probable cause underlying the search warrant in this case. Before contending with the merits of Reese's remaining claim, we must address the trial court's suggestion that Reese has waived his remaining issue for failure specifically to enumerate his claim in his Rule 1925(b) statement.

In relevant part, the trial court asserts that Reese has waived his first claim because Reese's "complaint is vague in that it fails to specify what information was lacking rendering the search warrant invalid." T.C.O. at 5. The trial court has cited numerous cases in support of its argument that Reese's 1925(b) statement is fatally vague. **Id.** at 4-5 (citing

*Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) ("[W]hen challenging the sufficiency of the evidence [to sustain a conviction] on appeal, the [a]ppellant's 1925[(b)] statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal."); *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008) ("If [a]ppellant wants to preserve a claim that the evidence was insufficient [to sustain a conviction], then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient." (emphasis omitted)); *Commonwealth v. McCree*, 857 A.2d 188, 192 (Pa. Super. 2004) ("[W]hen a trial court requests a statement of matters complained of on appeal . . ., that statement must indicate, with specificity, the error to be addressed on appeal.")). As this Court explained in *Gibbs*, in the context of a challenge to the sufficiency of the evidence, "[s]uch specificity is of particular importance in cases where, as here, the [a]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." 981 A.2d at 281.

This precedent is inapposite to the instant circumstances, because Reese's issue is **not** a challenge to the sufficiency of the evidence. Rather, Reese asserts that the search warrant issued in this case was not supported by probable cause. The potential pitfalls enumerated in *Gibbs* and *Williams* are not implicated by this case because Reese has not challenged

the sufficiency of the evidence. Reese's first issue, as it appears in his Rule 1925(b) statement, reads as follows: "Did the [trial court] err by denying [Reese's] pre-trial motion to suppress evidence based on a lack of probable cause where the affidavit of probable cause for the issuance of the warrant did not provide sufficient information for the issuing court to make a determination of probable cause?" Reese's [Errors] Complained of on Appeal, 5/14/2013, at 1 (unnumbered). Absent any case law to the contrary, we believe that this assertion of error adequately informed the trial court of the nature of Reese's concern, especially inasmuch as the issue was litigated at length by the parties before trial. *See* N.T. Trial I at 9-30. Moreover, the trial court's claim that Reese's statement is too vague to sustain his appeal is contradicted by the trial court's lengthy and cogent analysis of the merits of Reese's probable cause challenge. *See* T.C.O. at 11-15. Thus, we conclude that Reese has preserved his remaining claim.

"[Reese] challenges the trial court's determination that there was sufficient probable cause for an issuing magistrate to issue a warrant for the search and seizure of [Reese] at the 413 N. Edgewood residence." Brief for Reese at 9-10. The legal standards governing our review of this issue are well-established:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the

Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. *Commonwealth v. Bomar*, 826 A.2d 831, 842 (Pa. 2003). Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Mistler*, 912 A.2d 1265, 1269 (Pa. 2006) (quoting *Commonwealth v. Nester*, 709 A.2d 879, 881 (Pa. 1998)). Thus, the conclusions of law of the courts below are subject to our plenary review.

\* \* \*

Article I, Section 8 [of the Pennsylvania Constitution] and the Fourth Amendment [to the United States Constitution] each require that search warrants be supported by probable cause. "The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause." *Commonwealth v. Edmunds*, 586 A.2d 887, 899 (Pa. 1991) (quoting *Commonwealth v. Miller*, 518 A.2d 1187, 1191 (Pa. 1986)). "Probable cause exists where the facts and circumstances within the affiant's knowledge[,] and of which he has reasonably trustworthy information[,] are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Thomas*, 292 A.2d 352, 357 (Pa. 1972).

In *Illinois v. Gates*, 462 U.S. 213 (1983), the United States Supreme Court established the "totality of the circumstances" test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. In *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1986), [the Pennsylvania Supreme Court] adopted the totality of the circumstances test for purposes of making and reviewing probable cause determinations under Article I, Section 8. In describing this test, we stated:

Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in *Gates*, the task of an issuing authority is simply to make a practical,

- 12 -

common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons who supply hearsay information, **there is a fair probability that contraband or evidence of a crime will be found in a particular place**. . . . It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

\* \* \*

*Commonwealth v. Torres*, 764 A.2d 532, 537-38 (Pa. 2001) (emphasis added).

*Commonwealth v. Jones*, 988 A.2d 649, 654-55 (Pa. 2010) (internal citations modified).

Reese has devoted the majority of his argument to the claim that Detective Mullen ignored evidence that Reese actually resided on the 5700 block of Belmar Terrace in Philadelphia, and not at 413 North Edgewood. Specifically, Reese asserts that Detective Mullen misinformed the issuing magistrate by representing that Reese's last-known address was located on North Edgewood: "Detective Mullen's omission of the Belmar Terrace address, and insertion of the Edgewood residence[,] is a misstatement of fact that was both deliberate and material." Brief for Reese at 11 (citing *Commonwealth v. Tucker*, 384 A.2d 938, 941 (Pa. Super. 1978) ("Misstatements of fact will invalidate a search warrant and require

suppression of the fruits of the search only if the misstatements of fact are deliberate and material.")). This claim, while not dispositive on its own, hints at and implicates the larger deficiency undergirding the search warrant in this case. Even assuming, *arguendo*, that Detective Mullen's representations in the affidavit regarding Reese's occupancy of 413 North Edgewood did not constitute material and deliberate misrepresentations, the search warrant issued in this case was not supported by probable cause.

The precedent of this Court requires the Commonwealth to establish probable cause for the premises to be searched, and not only for the person suspected of criminal activity:

> Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home. . . . [A]n allegation based on an assumption or supposition not supported by the facts is insufficient to support (an inference of) criminal activity in a premises, in spite of the fact that there are plenty of allegations alleged to relate to criminal activity of the individual who is alleged to have lived in the premises.

*Commonwealth v. Kline*, 335 A.2d 361, 364 (Pa. Super. 1975); *see Commonwealth v. Way*, 492 A.2d 1151, 1154 (Pa. Super. 1985) ("[T]he lack of a **substantial nexus** between the street crime and the premises to be searched renders the warrant facially invalid." (emphasis added)). Additionally, a magistrate's determination of probable cause "must be based [up]on facts described within the four corners of the supporting affidavit." *Commonwealth v. Dukeman*, 917 A.2d 338, 341 (Pa. Super. 2007) (citing *Commonwealth v. Smith*, 784 A.2d 182, 184 (Pa. Super. 2001)).

The November 14, 2011 affidavit of probable cause in this case primarily recites the events of the robbery and describes the complainants' respective identifications of Reese. There is only one paragraph discussing the premises to be searched, which reads as follows:

> [Reese] has [eight] prior arrest[s] in Philadelphia and list[s] 413 N Edgewood for [six] of the arrest[s]. While being interviewed . . . [Harrison] informed [Detective] Mullen that during the afternoon hours of 11/13/11 he encountered the cousin of [Reese], a male he knows as Kyle Bentley, outside of 5700 Belmar. [Harrison] stated [that Bentley] informed him that [Reese] is residing in West Philly. The address of 413 N Edgewood is in the West Philadelphia area. On 4/27/11[, Reese] was released from prison. The prison release information list[s Reese's] address as 1413 N Edgewood. This address listing appears to be a typographical error. There are no connections for [Reese] to 1413 N Edgewood at all.

Continuation of Probable Cause for Search Warrant #161856, 11/14/2011, at 1. Stated simply, there is no information within the "four corners" of the affidavit of probable cause establishing any "nexus" between Reese's address and the instant robbery. **Way**, *surpa*. There **are** ample facts in the affidavit to establish both Reese's identity and that Reese resides at 413 North Edgewood Street.[4] However, the affidavit offers no factual basis for concluding that Reese's putative residence was connected to this robbery in

_____

[4] Our review of Detective Mullen's testimony at the pre-trial suppression hearing confirms that the above-mentioned information formed the basis for the warrant application in this case. N.T. Trial I at 21 ("Tak[ing] all that into totality, his criminal history, his prison release information, and that one of the victims talked to a relative that said [Reese] lived in West Philadelphia, I firmly believed that 413 North Edgewood was the right address.").

any way. Although the affidavit offered significant factual bases for concluding that Reese was a perpetrator, "[p]robable cause to believe that a man has committed a crime does not necessarily give rise to probable cause to search his home." *Way*, 492 A.2d at 1154.

This Court's reasoning in both *Kline* and *Way* is highly instructive.[5] In *Kline*, the police obtained a search warrant for an apartment after eyewitness complainants identified the defendant as a drug dealer and

_____

[5] Subsequent decisions have distinguished somewhat our holding in *Kline* and, by extension, *Way*. Specifically, this Court has enumerated several types of evidence that are sufficient to establish the "substantial nexus" between the place to be searched and the evidence to be seized. *See Commonwealth v. Davis*, 595 A.2d 1216, 1220-22 (Pa. Super. 1991) (holding that confidential informant's observation of a defendant coming and going from a specific house between three different narcotics' sales established "probable cause to believe that the objects sought . . . would be found in [the defendant's] home."); *Commonwealth v. Macolino*, 485 A.2d 1134, 1136-38 (Pa. Super. 1984) (holding that police established probable cause to search a home, when the affidavit of probable cause contained information wiretapped conversations emanating from the house discussing narcotics trafficking, and police surveillance of the property, wherein the defendant was observed coming and going from that house while meeting with a known narcotics supplier); *Commonwealth v. Frye*, 363 A.2d 1201, 1204 (Pa. Super. 1976) (holding that a defendant's admission may form the basis for establishing probable cause to search a specific locale, stating that "the nexus between the evidence to be seized and the place to be searched was provided by Frye's admission that he was conducting at least part of his unlawful operations from his home.").

We read these cases as standing for the general proposition that, while the Commonwealth must establish a nexus between the place to be searched and the items to be seized, that burden is not meant to be harshly interpreted. However, the central holding of *Kline* and *Way* – that mere evidence of a suspect's criminal activity and the location of his residence does not establish probable cause to search that residence – remains in force.

indicated that the defendant lived in that particular apartment.  Specifically,

three different informants stated that they had purchased drugs from the

defendant in the preceding week.  Although the complainants stated that the

defendant kept the drugs that he sold in his apartment, there was no factual

basis in the affidavit to support that claim:

> [The suppression court] suppressed the evidence seized
> pursuant to the warrant because [the suppression court]
> concluded that although the affidavit contained facts sufficient to
> establish that [the defendant] was indeed dealing in drugs and
> lived in the apartment described, it did not contain facts
> sufficient to establish the basis [up]on which the several
> informants . . . had concluded that [the defendant] had gone to
> his apartment to get the drugs.

*Kline*, 335 A.2d at 362-63.  On appeal, this Court upheld the suppression

court's ruling, stating that assumptions regarding the premises to be

searched are insufficient to establish probable cause:

> Here, as far as appears from the affidavit, none of the
> informants said where the [drugs were.]  The [informants]
> apparently concluded that [the drugs were] in [the defendant's]
> apartment.  However, an affidavit must set forth how
> information leading to such a conclusion was obtained.
> *Commonwealth v. Ambers*, 310 A.2d 347, 350 (Pa. Super.
> 1973); *Commonwealth v. Soychak*, 289 A.2d 119, 124 (Pa.
> Super. 1972).  There is no indication of where the transaction
> took place, how long it took, how long [the defendant] was
> gone, or what led the [informants] to conclude that [the
> defendant] had gone to his apartment. The information from the
> confidential informant does not corroborate their conclusion that
> [the defendant] kept drugs in his apartment, even though it
> does tend to establish that [the defendant] was a drug dealer.

*Id.* at 364 (internal citations modified).  Thus, the mere fact that an affidavit

of probable cause tends to establish the criminal activity of a defendant, and

the location of his home, does not provide probable cause to support the issuance of a search warrant for that home.

In *Way*, this Court relied upon *Kline* to suppress evidence seized pursuant to a search warrant in another narcotics case:

> The facts fairly summarized are that the informant arranged a drug transaction by phone. The alleged transaction occurred in a blue van along a country road. After the alleged transaction, police followed the blue van to a driveway of a property at the corner of Douglas Dr. and Glendale Rd. The informant identified appellant as the driver of the blue van. A police source told the affiant that appellant lived at the intersection of Douglas Dr. and Glendale Rd.

*Way*, 492 A.2d at 1154. The trial court concluded that the search warrant was supported by probable cause. On appeal, this Court reversed, concluding that, "within the four corners of the affidavit, we fail to find sufficient facts to permit an issuing authority reasonably to conclude that there was contraband in the premises to be searched." *Id.*

Turning to the instant case, examining the totality of the circumstances, and considering only the evidence adduced by the Commonwealth and the uncontradicted evidence of the defense, there are no factual averments in the affidavit that establish any "nexus" between Reese's home and the instant crime. Within its four corners, the affidavit establishes only probable cause to believe that Reese committed the robbery and lived at the subject residence.. Consequently, *Kline* and *Way* are analogous to the present case: "[T]he lack of a substantial nexus between

the street crime and the premises to be searched renders the warrant

facially invalid." ***Way***, 492 A.2d at 1154; ***see Kline***, 335 A.2d at 364.

Consequently, we conclude that the trial court erred in denying

Reese's suppression motion.[6],[7]  Because the search in the instant case was

_____

[6]    Based upon the transcript of the suppression hearing, it appears that the trial court may have predicated its initial denial of Reese's suppression motion upon a "good faith" exception to the "exclusionary rule," which requires that a warrant be supported by probable cause.  ***See*** N.T. Trial I at 27 ("So what's the impediment of me finding that police had a good faith basis to say that he was at that address on Edgewood?").  To be clear, the United States Supreme Court has created a "good faith" exception to the "exclusionary rule" of the Fourth Amendment to the United States Constitution.  ***See U.S. v. Leon***, 468 U.S. 897, 922-26 (1984).  However, the Supreme Court of Pennsylvania specifically has declined to adopt such an exception pursuant to Article I, Section 8, of the Pennsylvania Constitution. ***Commonwealth v. Edmunds***, 586 A.2d 887, 905-06 (Pa. 1991) ("Article I, Section 8 of the Pennsylvania Constitution does not incorporate a 'good faith' exception to the exclusionary rule."); ***see Commonwealth v. Johnson***, 86 A.3d 182, 188-89 (Pa. 2014) (stating that ***Edmunds*** constitutes "binding precedent" and that, under Article I, Section 8 of the Pennsylvania Constitution, "the exclusionary remedy [is] deemed available even in a situation where police acted in good faith.").

[7]    Despite concluding that the trial court erred in failing to suppress the evidence seized at 413 North Edgewood, we also must assess whether the trial court's error was harmless, such that no relief is due:

> Once a reviewing court has decided that admitted evidence should have been suppressed, it must determine beyond a reasonable doubt whether the error was harmless.  When the error is harmless, a new trial is not warranted.  Harmless error exists if the reviewing court is convinced from the record that (1) the error did not prejudice the defendant or the prejudice was *de minimis*, (2) the erroneously admitted evidence was merely cumulative of other untainted evidence, or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so

*(Footnote Continued Next Page)*

conducted pursuant to an invalid warrant, the evidence seized as a result of the search must be suppressed. We vacate Reese's judgment of sentence, and we remand for further proceedings consistent with this memorandum.

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Strassburger, J. files a Dissenting Memorandum.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Prothonotary

Date: 8/6/2014

---

*(Footnote Continued)*

> insignificant by comparison that the error could not have contributed to the guilty verdict.

***Commonwealth v. Petroll***, 738 A.2d 993, 1005 (Pa. 1999) (citing ***Commonwealth v. Hawkins***, 701 A.2d 492, 507 (Pa. 1997)); ***see Commonwealth v. Story***, 383 A.2d 155, 164-65 (Pa. 1978). "In applying the harmless error analysis in a particular case, it is imperative that the burden of establishing that the error is harmless beyond a reasonable doubt rests upon the Commonwealth." ***Commonwealth v. West***, 834 A.2d 625, 635 (Pa. Super. 2003) (citing ***Commonwealth v. Drummond***, 775 A.2d 849, 853 (Pa. Super. 2001)); ***see Commonwealth v. Story***, 383 A.2d 155, 162 n.11 (Pa. 1978). Instantly, the Commonwealth has not offered a discussion of harmless error in its brief before this Court. In the absence of cogent argument, the Commonwealth cannot fulfill its burden of establishing that the error in this case was harmless. Thus, we conclude that the error in this case was not harmless.