Commonwealth *v.* Tasco et al., Appellants.

Argued September 11, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

Before HESS, P. J.

*Gene D. Cohen,* with him *Gustine J. Pelagatti,* for appellants.

*Grant E. Wesner,* Deputy District Attorney, with him *Robert L. VanHoove,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., April 3, 1974:

Appellants were arrested on September 10, 1967, while participating in a card game at a farm in Berks County. They were convicted at a jury trial of the

crime of establishing a gambling place.[1] On this appeal
they contend that the search warrant that led to their
arrest and conviction was constitutionally defective and
that therefore the items seized pursuant to the warrant
should not have been admitted as evidence against
them. We agree.[2]

The transcript of the suppression hearing discloses
the following facts. On the evening of September 10,
1967, Corporal Holloway of the Pennsylvania State
Police applied to Lawrence Palmer, the Alderman of
the 19th Ward of Reading, for a search warrant. After
being sworn, the corporal gave the alderman certain
information, which will be described later in this opin-
ion. The alderman thereupon prepared an affidavit for
a search warrant, which the corporal signed. The affi-
davit recited that it was based on "[I]nformation re-
ceived from State Police investigators-County Detec-
tives-Confidential police informant used in the past
and proven to be reliable and trustworthy, from obser-
vation by affiant-State Police and County Detectives
from September 10, 1967 at 4:00 p.m. to September 10,
1967 at 8:00 p.m. and upon personal investigation by
affiant conducted from September 5th, 1967 to Sep-
tember 10th, 1967. . . ." The affidavit went on to iden-
tify a particular building, which it said was being used
"for gambling purposes by one Mr. Samuel Damiano,
Et Al." On the strength of the affidavit and the cor-
poral's sworn oral statement the alderman issued a
search warrant, which the corporal took to the suspect
building. Upon looking through the window he saw

---

[1] Act of June 24, 1939, P. L. 872, 605, 18 P.S. §4605 (now re-
pealed and recodified at 18 Pa.S. §5513).

[2] Because the case can be disposed of on this issue alone we
do not reach appellants' other two contentions: (1) that the present
prosecution is barred by the doctrine of double jeopardy, and (2)
that the evidence presented at trial was insufficient to establish
guilt beyond a reasonable doubt.

each of appellants acting at various times as the dealer in a game of acey-deucey. He executed the warrant and arrested all the participants in the game, including appellants and Damiano. A blanket used as a table cover, several sets of dice, several decks of cards, and some money were seized as evidence.

In denying the motion to suppress the evidence, the hearing judge found that "the testimony would appear to substantiate the fact that Santo [sic] Damiano was the owner of the premises" searched (Finding of Fact No. 4), that Damiano was not then contesting the validity of the warrant,[3] and that appellants, "while they may have been upon the premises, upon the occasion of the search, do not appear to have been, in any way, owners of the establishment, and as far as this proceeding is concerned, would appear to be strangers to the property, and have no interest in the ownership or control of the said real estate" (Finding of Fact No. 8). From these findings the judge concluded that "[n]o legal reason exists for suppressing the evidence. . . ." (Conclusion of Law No. 3).[4]

On this record, two questions are presented: whether appellants had standing to challenge the warrant; and if they did, whether the warrant was validly issued.

In *Jones v. United States,* 362 U.S. 257 (1960), the Supreme Court interpreted the words "person aggrieved

---

[3] Damiano was not tried with appellants. The disposition of his case is thus not part of the record.

[4] The judge did not rest his order only upon the conclusion that appellants had no standing but also made the following conclusions of law: "1. The search warrant was properly issued. . . . 2. The search warrant was properly served upon the owner of the premises in question." The post-trial motions do not include an allegation that the warrant was not based on probable cause but only that appellants were precluded from arguing that it was not. In light of the judge's conclusions, we find this allegation adequate to preserve for appeal both the issue of standing and the issue of probable cause.

by an unlawful search and seizure" in Rule 41(e) of the Federal Rules of Criminal Procedure to include one in possession of the seized item or one who was legitimately on the premises (*i.e.*, not a trespasser). Accordingly, the fact that Jones was a "mere guest" in the apartment did not preclude his being a "person aggrieved."

Rule 323(a) of the Pennsylvania Rules of Criminal Procedure is the analogue of Rule 41(e) of the Federal Rules of Criminal Procedure. Rule 323(a) provides: "The defendant or his attorney may make application to the court to suppress any evidence alleged to have been obtained in violation of the defendant's constitutional rights."

In determining whether a "defendant's constitutional rights" have been violated within Rule 323(a) the same test should be applied as was applied in *Jones*.[5] To limit standing to object to a search warrant to the owner of the premises searched is to demean the constitutional right asserted:[6] "[I]t is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by dis-

---

[5] The following proposition appears in 33 P.L.E. Searches & Seizures, §2, 151, text accompanying note 20: "Only the owner of property searched or seized, or one having a lawful interest therein, may object to the unlawfulness of the search or seizure." No Pennsylvania cases are cited for this proposition, with the exception of *Commonwealth v. Raymond*, 412 Pa. 194, 194 A. 2d 150 (1963), *cert. denied*, 377 U.S. 999 (1964), discussed *infra;* the federal cases cited are prior to, and by necessary implication have been overruled by *Jones*. *Commonwealth v. Rowe*, 433 Pa. 14, 249 A. 2d 911 (1969), discussed *infra*, is not cited.

[6] This is so whether the assertion is based on Federal or State law. U. S. Const., amend. IV; Pa. Const. art. I, §8.

tinctions whose validity is largely historical. . . . Distinctions such as those between "lessee," "licensee," "invitee" and "guest," often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards." *Jones v. United States, supra* at 266.

In the present case appellants were legitimately on the premises, and although they were not named in the search warrant,[7] the search was unquestionably directed at them. Accordingly, under Rule 323(a) of the Pennsylvania Rules of Criminal Procedure, read in the light of *Jones v. United States, supra,* appellants had standing to challenge the validity of the warrant.

In fairness to the court below it should be noted that until our decision today *Jones* had been adopted in Pennsylvania only implicitly.

In *Commonwealth v. Rowe,* 433 Pa. 14, 17, 249 A. 2d 911, 912 (1969), *Jones* was cited and applied by three justices of a divided court. There the question was whether the defendant had standing to contest a warrant for the search of his co-conspirator's father's home. The defendant was on the premises when the police arrived and found a gun, which was the property of the co-conspirator's father. Mr. Justice EAGEN, writing for himself and Justices O'BRIEN and ROBERTS, said that the defendant was in a place where he had a "reasonable expectation of freedom from governmental intrusion," and that therefore under *Jones, Marcusi v. DeForte,* 392 U.S. 364 (1968) and *Katz v. United States,* 389 U.S. 347 (1967), the court below had correctly ruled that he had standing to contest the legality of the warrant. The state and federal rules were not discussed, the cited cases being read as stating a principle of federal constitutional dimensions.

---

[7] Neither were they excluded, however; the warrant authorized the search and seizure of "Samuel Damiano, Et Al."

*Jones* has also been cited where standing has been denied, but this has been in cases where the defendant not only lacked possessory interest either in the thing seized or in the premises searched but also was not on the premises (legitimately or otherwise) when the search occurred. In *Commonwealth v. Raymond,* 412 Pa. 194, 194 A. 2d 150 (1963), the defendant was denied standing to object to the search of a room in his cousin's house where he occasionally slept, although never for more than one night at a time. *Jones* was cited, but only by way of contrast: "In *Jones,* the defendant was present in the apartment searched at the time thereof and his presence therein was with the permission of the owner. At the relevant time, he was in possession." *Id.* at 201, 194 A. 2d at 153. In *Commonwealth v. Williams,* 219 Pa. Superior Ct. 109, 280 A. 2d 430 (1971), where the police stopped and searched a teenager coming out of the defendant's house and discovered drugs and then searched the house itself, it was held that the defendant could not object on the basis of the infringement of the teenager's constitutional rights, *Jones* being cited for the proposition that only the person against whom the search is directed can object.

It thus appearing that appellants had standing to challenge the warrant it is in order to consider whether the warrant was validly issued.

Under *Aguilar v. Texas,* 378 U.S. 108 (1964), as explicated in *Spinelli v. United States,* 393 U.S. 410 (1969), whenever a finding of probable cause to issue a search warrant is based on information from an informer, the affiant must give the issuing authority a statement of facts sufficient to enable the issuing authority to make two independent judgments: (1) that the affiant is probably correct in his belief that the informer is reliable; and (2) that what the informer

told the affiant is probably accurate. Here no such facts were given the alderman by the corporal.

The affidavit in support of the warrant has been quoted above. It describes the "Confidential police informant" as "proven to be reliable and trustworthy" but gives no facts enabling a judgment as to the accuracy of that description; and although it refers to "information received" from the informer, it does not say what that information was. The affidavit also refers to a "personal investigation by affiant" but neither describes the investigation nor states what was learned as a result of it.

The sworn oral statement that the corporal gave the alderman was hardly fuller than the affidavit.[8] The statement was not transcribed but the alderman testified to it from his notes, which he read to the hearing judge as follows:

"On 8-27-67, information received from a confidential police informant, proved reliable in the last three raids—proved successful, that a game was going to be going at Damiano's farm, at Blue Marsh, September 10th, 1967.

" 'Big Daddy' was going to be present there at the game. I have 'Biancone' on, in parentheses.

"September 5th, 1967, a confidential police informant, used in the past, information reliable and trustworthy.—I have to try to decipher this (indicating)— That Mr. Damiano was selling tickets for an outing for September 10th, 1967. There was a big game to be had at noon.

"On September 10th, 1967, he [the affiant] observed a lot of motor vehicles and Joseph Biancone walking

---

[8] Evidence of what the corporal said is no longer admissible. Pa. R. Crim. P. 2005-10; *and see Commonwealth v. Milliken*, 450 Pa. 310, 300 A. 2d 78 (1973); *Commonwealth v. Simmons*, 450 Pa. 624, 301 A. 2d 819 (1973). These rules, however, were made prospective only.

around the area. Mr. Damiano was in the area. I'm having a little difficulty with this one (indicating) Judge. It was a shingled building.

"He [the affiant] proceeded to give me information that it was a two-story frame building, with siding, and there was poker and dice games and associated paraphernalia under the control of Samuel Damiano, in Lower Heidelberg Township."

Perhaps the statement, "proved reliable in the last three raids—proved successful", was enough to support an independent judgment of the informer's reliability. However, even assuming that it was, it remains unclear what the informer told the corporal; and in any case, no facts were stated enabling an independent judgment that whatever it was the informer said, it was probably accurate. So far as the events the corporal said he had observed ("a lot of motor vehicles and Joseph Biancone walking around the area. Mr. Damiano was in the area"), by themselves these reflected only innocent activity; and given the inability to appraise the informer's statements, the alderman had no basis for regarding them as other than innocent. *Cf. United States v. Harris,* 403 U.S. 573 (1971).

Accordingly, the warrant having been issued without an independent finding of probable cause, the evidence seized pursuant to the warrant should not have been admitted against appellants. *Wong Sun v. United States,* 371 U.S. 471 (1963).

The judgments of sentence are vacated, and the matter remanded for a new trial consistent with this opinion.

WATKINS, P. J., dissents.

WRIGHT, P. J., and SPAULDING, J., did not participate in the consideration or decision of this case.