## Commonwealth, Appellant, *v.* Kline.

Submitted June 10, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Grant E. Wesner,* Deputy District Attorney, and *Robert L. VanHoove,* District Attorney, for Commonwealth, appellant.

*George E. Goldstein,* and *Goldstein and Rosenblum,* for appellee.

OPINION BY SPAETH, J., March 31, 1975:

This is an appeal by the Commonwealth from an order suppressing evidence obtained pursuant to a search warrant.[1]

The affidavit for the warrant read (in pertinent part) as follows:

"1. That on 6-12-73 at about 7:30 P.M. two young girls, Rose Padilla age 16 and Judy Ohlinger age 14 were treated at St. Josephs Hosp. for abuse of LSD.

On 6-13-73 at 1:30 p.m. both above females came to the Vice Office with their parent and gave the following information. Each female was questioned separate from the other and then together and both times they both gave the same account of what took place. They stated that they knew this person named Morgan Arthur who lives above the Junction Inn at 9th & Robinson St., and they knew that he was selling drugs. They asked him for some LSD and he went to his Apt. at 9th & Robinson and returned a few minutes later with two "Hits" of "Blotter Acid" (LSD on small pieces of Paper). Morgan Arthur gave this LSD to the two females and told them to chew it first and then swallow it. Both girls stated that they began to feel the effects about 30 Minutes. Both girls identified a photo of Morgan Arthur. The Girls stated that

---

1. Since the crimes charged involve possession and sale of drugs, the suppressed evidence is crucial to the Commonwealth's case. The Commonwealth can thus appeal the suppression order. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963). Appellee has not contested our jurisdiction to hear this appeal.

Arthur lives in the 3rd floor Apt with Michael Heinecke.

Feb. 1, 1973—Michael Heinecke was arrested by Officer Hain at Reading High for Assault and Disorderly conduct. After being arrested Heinecke was observed by Officer Hain, swallowing a quantity of capsules. Heinecke required treatment and was admitted at St. Josephs Hosp. for a overdose of Barbiturates. Heinecke has admitted to Det Yerger that he is "Hooked" on Barbiturates.

2. 6-13-73—Det Yerger contacted an informant and asked about Morgan Arthur and Michael Heinecke this informant stated that he had been with Arthur and Heinecke during the past two weeks and the informant stated that they were selling Hashish, Marihuana, LSD and Heroin. The informant stated that they did not have all these drugs at one time but at different times during the past two weeks. The informant stated that he has purchased some marihuana from Morgan Arthur about one week ago and that this marihuana was for another person.

Information from this informant also stated that Arthur was living with Heinecke at 9th & Robinson above the Junction Inn.

This informant has given information in the past two years that has resulted in the arrest of at least twenty persons on drug charges; the following are some of these persons, Harold Mann, Bonnie Swyenski, Gary Melton, James Brown, Byron Viccari, Donald McCullom and Cassandra Heines."

Although appellant is not named in this recitation, it was he who answered the apartment door when the police served the warrant.

Judge HESS suppressed the evidence seized pursuant to the warrant because he concluded that although the affidavit contained facts sufficient to establish that Morgan Arthur was indeed dealing in drugs and lived in the

apartment described, it did not contain facts sufficient to establish the basis on which the several informants (the two girls, Rose and Judy, and the confidential informant) had concluded that Arthur had gone to his apartment to get the drugs.

Under *Aguilar v. Texas,* 378 U.S. 108 (1964), as explicated in *Spinelli v. United States,* 393 U.S. 410 (1969), whenever a finding of probable cause to issue a search warrant is based on information from an informant, the affiant must give the issuing authority a statement of facts sufficient to enable the issuing authority to make two independent judgments: (1) that the informant had knowledge of sufficient facts to conclude that the suspect was engaged in criminal activity; and (2) that the affiant is justified in his belief that the informant is reliable. *Commonwealth v. Conner,* 452 Pa. 333, 305 A.2d 341 (1973); *Commonwealth v. Simmons,* 450 Pa. 624, 301 A.2d 819 (1973); *Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973); *Commonwealth v. Tasco,* 227 Pa. Superior Ct. 144, 323 A.2d 831 (1974); *Commonwealth v. Ambers,* 225 Pa. Superior Ct. 381, 310 A.2d 347 (1973).

There has not been any contention that the second requirement of this test was not met. The confidential informant referred to in part 2 of the affidavit is not identified; and although it is said that information given by him "resulted in the arrest of at least twenty persons," it is not said whether any of these persons were convicted. However, the two girls, Rose and Judy, identified as informants in part 1 of the affidavit, were as much victims of the crime as participants in it, and as they were private citizens, the information received from them could be considered at least as reliable as information received from a regular anonymous police informer. *Commonwealth v. Cosby,* 234 Pa. Superior Ct. 1, 335 A.2d 531 (1975); *Commonwealth v. Whitehouse,* 222 Pa. Superior Ct. 127, 292 A.2d 469 (1972).

What is before us is the question whether the informants supplied information sufficient to justify the inference, not only that criminal activity was afoot (their information was certainly sufficient for that), but also that the premises to be searched were instrumental in that activity. "Although the information supplied the magistrate '. . . must be tested with a commonsense, nontechnical, ungrudging, and positive attitude, . . .', *Rosencranz v. United States*, 356 F.2d 310, 314 (1st Cir. 1966); *United States v. Ventresca*, 380 U.S. 102, 108-09, 85 S.Ct. 741, 746 (1965), the information *must be* sufficient '. . . to enable the magistrate independently to judge of the validity of the informant's *conclusion that the narcotics were where he said they were.*' *Spinelli,* supra at 413, 89 S.Ct. at 587 (emphasis added). See also *Jones v. United States*, 362 U.S. 257, 84 S.Ct. 725 (1960)." *Commonwealth v. Simmons, supra* at 629, 301 A.2d at 822.

Here, as far as appears from the affidavit, none of the informants said where the L.S.D. was. The girls apparently concluded that it was in Arthur's apartment. However, an affidavit must set forth how information leading to such a conclusion was obtained. *Commonwealth v. Ambers*, 225 Pa. Superior Ct. 381, 310 A.2d 347 (1973); *Commonwealth v. Soychak*, 221 Pa. Superior Ct. 458, 289 A.2d 119 (1972). There is no indication of where the transaction took place, how long it took, how long Arthur was gone, or what led the girls to conclude that he had gone to his apartment. The information from the confidential informant does not corroborate their conclusion that Arthur kept drugs in his apartment, even though it does tend to establish that Arthur was a drug dealer.

Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home. Judge HESS stated the matter well in his memorandum opinion: "In our opinion an allegation based on an assumption or supposition not supported by the facts is insufficient to support [an infer-

ence of] criminal activity in a premises, in spite of the fact that there are plenty of allegations alleged to relate to criminal activity of the individual who is alleged to have lived in the premises."

Order affirmed.

JACOBS, PRICE, and VAN DER VOORT, JJ., dissent.