J-A23008-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
v. :
:
JONATHAN H. DELACRUZ, :
:
Appellee : No. 1242 WDA 2013

Appeal from the Order entered July 29, 2013,
Court of Common Pleas, Cambria County,
Criminal Division at No(s): CP-11-CR-0000538-2012,
CP-11-CR-0000540-2012 and CP-11-CR-0000541-2012

BEFORE: DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.: **FILED SEPTEMBER 18, 2014**

The Commonwealth of Pennsylvania appeals from the July 29, 2013

order entered by the Cambria County Court of Common Pleas granting, in

part, the motion to suppress filed by Jonathan H. Delacruz ("Delacruz").

After careful review, we affirm.

The facts underlying this appeal, summarized by the suppression

court, are as follows:

> Detective Kevin Price (Price) testified that he is a
> detective with the Cambria County District Attorney's
> Office and the field supervisor of the Cambria County
> Drug Task Force (Task Force). Price testified, in
> conformity with the affidavit of probable cause
> (Affidavit) attached to the search warrant
> applications, that during an investigation into the
> sale of crack cocaine in the Johnstown area the Task
> Force became aware that Delacruz and Kevin
> Coggins (Coggins) may be involved in the drug
> trade. The Task Force initiated surveillance of the

pair along with their known or suspected residences at 171 State Street and 1937 Minno Drive[FN] both in Johnstown. The Task Force eventually became aware that Samantha Zack (Zack) was living with Delacruz on State Street but listed her address as Rear 150 Bucknell Avenue with her probation officer.

During the surveillance[,] the Task Force learned that Delacruz owned a black Mazda registered to him at a Haynes Street address that was frequently driven by Coggins and was renting a white Ford Taurus that he would drive. The Task Force utilized two confidential informants (CI) to make a total of five controlled drug buys from Delacruz and Coggins.

**Buy 1:** On February 6, 2012[,] a CI called Delacruz's phone and spoke with Coggins who arranged to meet the CI on Virginia Avenue for the purpose of selling him crack cocaine. Coggins arrived in the black Mazda, the transaction took place and Coggins left. The Task Force did not know where Coggins came from or returned to. The substance obtained from Coggins tested positive as cocaine.

**Buy 2:** On February 10, 2012[,] a CI called Delacruz who arranged to meet the CI on Virginia Avenue for the purpose of selling him crack cocaine. Delacruz arrived in the white Ford, the transaction took place and Delacruz left. The Task Force did not know where Delacruz came from or returned to but did observe him later at the State Street address. The substance obtained from Delacruz tested positive as cocaine.

**Buy 3:** On February 15, 2012[,] a CI called Delacruz's phone who arranged to meet the CI for the purpose of selling him crack cocaine. Coggins arrived in the black Mazda, the transaction took place and Coggins left. The Task Force did not know where Coggins came from but followed him to 3[]Red's Bar following the transaction. During the transaction[,] surveillance was being conducted on the State Street address and Zack was observed

there. The substance obtained from Coggins tested positive as cocaine.

**Buy 4:** On February 16, 2012[,] a CI called Delacruz's phone who arranged to meet the CI on Virginia Avenue for the purpose of selling him crack cocaine. Coggins arrived in the black Mazda, the transaction took place and Coggins left. The Task Force did not know where Coggins came from but followed him to the Bucknell address following the transaction. During the transaction[,] surveillance was being conducted on the State Street address and both Delacruz and Zack were observed there. The substance obtained from Coggins tested positive as cocaine.

**Buy 5:** On February 25, 2012[,] a CI called Delacruz's phone who informed the CI he was out of town and told him to call Coggins. The CI then called Coggins who arranged to meet the CI for the purpose of selling him crack cocaine. Coggins was observed leaving the State Street address in the black Mazda and driving to the Minno Drive location. Coggins exited the vehicle there, was not observed entering the building, reentered his vehicle and drove to Virginia Avenue where the transaction was to occur. The transaction took place, Coggins left and was observed driving to the Bucknell address and entering the residence there. He then left Bucknell and returned to State Street. The substance obtained from Coggins tested positive as cocaine.

Based upon these transactions and surveillance[,] Price filed three applications for search warrants, one each for the Bucknell, State Street, and Minno Drive addresses. Attached to each application was an identical Affidavit of Probable Cause. A review of the Affidavit reveals: that neither Delacruz's white Ford nor Zack's vehicle was ever seen at the Bucknell address; that Delacruz, Zack, and Coggins are listed as the '[o]wner, occupier, or possessor' of each of the properties; and that Coggins was observed on one occasion driving to the Minno Drive address to

- 3 -

> pick up mail but was not seen entering the residence. Further, the Affidavit includes no information that any member of the Task Force or any CI was told by Delacruz or Coggins that drugs were stored at any of the locations or that they personally observed drugs at those places.
>
> Delacruz moved to suppress the evidence obtained from all three warrants as to him[,] arguing that no connection or nexus [exists] between his street activities and those locations. Following a hearing on the motion held July 3, 2013[,] the Court directed the parties to file briefs. After review of the briefs, hearing testimony, and law[,] the Court entered its July 29, 2013, Order denying the motion as to the State Street and Minno Drive properties and granting it as to the Bucknell address.
>
> _____
> [FN] Delacruz listed the Minno Drive address as his residence but was known to be living at the State Street address.

Suppression Court Opinion, 10/28/13, at 2-4 (footnote included in the original; other footnote omitted).

The Commonwealth filed a timely notice of appeal, certifying therein that the suppression court's order terminated or substantially handicapped the prosecution pursuant to Pa.R.A.P. 311(d). It thereafter complied with the trial court's order for a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). It raises one issue for our review: "Did the suppression court err in suppressing evidence found via a search warrant served at 150 Bucknell Avenue, Rear, Johnstown, PA?" Commonwealth's Brief at 5.

We review a decision concerning a motion to suppress to discern whether the suppression court's findings of fact are supported by the record and whether the legal conclusions drawn therefrom are correct. *Commonwealth v. Thompson*, 93 A.3d 478, 484 (Pa. Super. 2014) (citation omitted). We are not bound by the suppression court's legal conclusions, but must apply the law to the supported facts found by the suppression court. *Id.* The suppression court's conclusions of law are subject to our plenary review. *Id.*

The Commonwealth breaks its issue into two sub-arguments: (1) the suppression court erred by finding that Delacruz had a privacy interest in the Bucknell address that permitted him challenge the search of that location (Commonwealth's Brief at 10-16), and (2) the suppression court erred by finding that the warrant request contained insufficient probable cause to connect Delacruz to the Bucknell address (*id.* at 16-26). We begin with the first sub-argument, which we find waived for the following reasons.

As the Commonwealth concedes, because Delacruz is charged with a possessory offense, he has automatic standing to challenge the search. Commonwealth's Brief at 10 (citing *Commonwealth v. Caban*, 60 A.3d 120, 126 (Pa. Super. 2012), *appeal denied*, 79 A.3d 1097 (Pa. 2013)). "To prevail in a challenge to the search and seizure, however, a defendant accused of a possessory crime must also establish, as a threshold matter, a legally cognizable expectation of privacy in the area searched." *Caban*,

60 A.3d at 126 (citation omitted). This is where the Commonwealth claims Delacruz failed. *See* Commonwealth's Brief at 11-15. The record reflects that in his motion to suppress and at the suppression hearing itself, Delacruz claimed he had a privacy interest in the Bucknell address by virtue of the Commonwealth identifying Delacruz as an "owner, occupant or possessor" of the residence on the face sheet of the warrant request associated with that property. Motion to Suppress Physical Evidence, 4/26/13, at 2 n.1; N.T., 7/3/13, at 47.[1] The Commonwealth did not object in either instance, nor did it present any argument in opposition to Delacruz's claimed privacy interest at that time. Rather, the Commonwealth challenged Delacruz's privacy interest in the Bucknell property for the first time in its brief in opposition to Delacruz's motion to suppress, filed three weeks after the suppression hearing. *See* Brief in Opposition to Defendant's Motion to Suppress, 7/26/13, at 10-11.

"[T]o preserve a claim of error for appellate review, a party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings; failure to raise such objection results in waiver of the underlying issue on appeal." *Commonwealth v. Akbar*, 91 A.3d 227, 235 (Pa. Super. 2014). As the

---

[1] In both instances, Delacruz erroneously refers to this as supporting his "standing" to challenge the search. As he is conferred automatic standing because he was charged with a possessory offense, we understand him to be raising this in support of a privacy interest argument.

Commonwealth failed to raise a timely objection to or argument against Delacruz's claimed privacy interest, the issue is not preserved for our review on appeal.

We now turn to the Commonwealth's second sub-argument relating to the finding that its request for a warrant lacked sufficient probable cause to issue the warrant. The issuance of a constitutionally valid search warrant requires that police provide the issuing authority with sufficient information to persuade a reasonable person that there is probable cause to conduct a search, based upon information that is viewed in a common sense manner. ***Commonwealth v. Housman***, 986 A.2d 822, 843 (Pa. 2009). The issuing authority must determine whether, given the totality of the circumstances presented, there is a fair probability that evidence of a crime or contraband will be found in a particular location. ***Id.*** The task of the reviewing court is to ensure that the issuing authority had a substantial basis to conclude that probable cause existed. ***Id.***

The suppression court found that the totality of the circumstances did not give rise to a finding of probable cause that evidence of a crime or contraband relating to Delacruz would be found at the Bucknell address based upon its conclusion that "the Affidavit is devoid of any evidence or suggestion that connects Delacruz's street activities to that location." Suppression Court Opinion, 10/28/13, at 8. In so finding, the suppression court relied upon this Court's *en banc* decision in ***Commonwealth v. Kline***,

335 A.2d 361 (Pa. Super. 1975) (*en banc*), wherein we held: "Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." *Id.* at 364.

In *Kline*, police obtained a search warrant to search the defendant's home based upon allegations that his roommate sold two teenaged girls L.S.D. The affidavit was devoid of any indication that the L.S.D. came from the apartment in question. *Id.* The only statement in support of that finding was the girls' statements that when they asked him for L.S.D., the roommate went to his apartment and returned with the drugs. *Id.* at 362. "There [was] no indication of where the transaction took place, how long it took, how long [the roommate] was gone, or what led the girls to conclude that he had gone to his apartment." *Id.* at 364. We therefore affirmed suppression of the evidence discovered pursuant to the search warrant.

The Commonwealth asserts that the suppression court's reliance on *Kline* is misplaced, as the question before the Court in that case turned on the credibility of the informants.[2] Commonwealth's Brief at 21-22. The

---

[2] In a footnote, the Commonwealth also baldly states that *Kline*'s "precedential authority is in question" because it was decided in 1975 and thus under the former *Aguilar-Spinelli* standard for determining whether there is probable cause to issue a search warrant, as opposed to the present totality of the circumstances test enunciated in *Illinois v. Gates*, 462 U.S. 213 (1983), adopted in Pennsylvania *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1986). Commonwealth's Brief at 21-22 n.13. This argument is woefully underdeveloped. We note, however, that in 2012, our Supreme Court, utilizing the totality of the circumstances test set forth in *Gates* and *Gray*, relied in part on the holding announced in *Kline* to affirm the

Commonwealth states that this Court's holding in **Commonwealth v. Davis**, 595 A.2d 1216 (Pa. Super. 1991), is more factually similar.[3] In **Davis**, this Court reversed the trial court's finding, in relevant part, that "the affidavit did not contain sufficient facts to believe that drugs would be found in defendant's residence." **Id.** at 1219, 1221. We concluded that the following information provided adequate probable cause to support a search of the defendant's home: (1) the defendant was seen leaving and returning to the residence; (2) an informant observed the defendant conducting drug sales in the street and entering the residence after each sale; and (3) the defendant told the informant that he recently received a shipment of drugs, which logically meant that he would need somewhere to store the drugs. **Id.** at 1221.

We disagree that **Davis** is controlling or that it is factually similar to the case at bar. Here, the sum total of information relating to 150 Bucknell Avenue, Rear, contained in the affidavit of probable cause, is as follows:

---

suppression court's grant of suppression, concluding "[t]here is nothing in this affidavit which would establish any nexus between Appellant's house and the sale or storage of drugs." **Commonwealth v. Wallace**, 42 A.3d 1040, 1049-50 (Pa. 2012). We thus disagree that there is any uncertainty regarding the precedential value of **Kline**.

[3] The Commonwealth also points to **United States v. Hodge**, 246 F.3d 301 (3d Cir. 2001), in support of its argument. Commonwealth's Brief at 23-24. Although in some cases they may be persuasive, the decisions of federal courts inferior to the United States Supreme Court are not binding on this Court. **Commonwealth v. Huggins**, 68 A.3d 962, 968 (Pa. Super. 2013), *appeal denied*, 80 A.3d 775 (Pa. 2013). As we conclude there is existing precedent that guides our decision, we need not discuss the **Hodge** case.

- it is Zack's registered address, although she was not observed by police to be living there;

- following the February 16, 2012 buy, Coggins went to a Sheetz, purchased food that he ate in his car, and then went to the Bucknell address and went inside the apartment there;

- during the week of February 20, 2012 (date not specified), the Task Force observed Coggins drive from the State Street address to the Minno Drive address to retrieve mail, and then drive to the Bucknell address; no drug sale occurred during this surveillance; and

- within the 24 hours preceding the warrant request, the Task Force observed Coggins leave from the State Street address immediately after setting up a buy over the phone; drive to the Minno Drive address; exit his vehicle there; return to his vehicle and drive from Minno Drive to the location to sell the CI drugs; and then drive from the buy to the Bucknell Avenue address.

Defendant's Exhibit C, Affidavit of Probable Cause, at ¶¶ 13, 18, 22, 28.

Unlike in **Davis**, neither Delacruz nor his alleged coconspirators were ever observed leaving from the Bucknell Avenue address, let alone prior to selling drugs to the CIs. Evidence present in **Davis** regarding the receipt of a shipment of drugs is also absent here. Moreover, even if we were able to deduce that Delacruz was "out of town re-upping" when Coggins made the sales instead of Delacruz (**see id.** at ¶ 7), there is nothing to suggest that there was a probability that the drugs would be stored in the Bucknell Avenue residence. **See Housman**, 986 A.2d at 843. To the contrary, the record suggests that the drugs in question were more likely to be found at either the Minno Drive or State Street addresses. Police did not observe Delacruz or Coggins leaving from the Bucknell Avenue address prior to

effectuating any of the drug sales, but they were observed at both the State Street and Minno Drive addresses.

In **Commonwealth v. Way**, 492 A.2d 1151 (Pa. Super. 1985), an informant arranged over the phone to purchase drugs from the defendant. The defendant, driving a blue van, met the informant on a country road. After the transaction, the police followed the defendant to a property located at the corner of Douglas Drive and Glendale Road, which another source informed police was the defendant's residence. **Id.** at 1154. Based on **Kline**, we concluded that this information was not enough to give rise to a finding of probable cause to search his home. Rather, we found that "the lack of a substantial nexus between the street crime and the premises to be searched renders the warrant facially invalid." **Id.**

The Commonwealth points to the fact that Delacruz was charged as Coggins' conspirator, and pursuant to "the concept[s] of conspirator and accomplice liability," the search warrant provided sufficient probable cause to permit the search of the Bucknell Avenue address as to Delacruz. Commonwealth's Brief at 25-26. Our review of the record, however, leads us to conclude that, pursuant to the **Kline** and **Way** decisions, the affidavit of probable cause failed to establish probable cause to search the Bucknell Avenue address as to anyone in this case. The only "evidence" connecting the drug sales to the Bucknell Avenue address was that Coggins went there twice after selling drugs to the CIs. This is insufficient to establish probable

J-A23008-14

cause to search 150 Bucknell Avenue, Rear by any theory – coconspirator or otherwise.[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2014

---

[4] We recognize that in its written opinion pursuant to Pa.R.A.P. 1925(a), the trial court stated that it believed the warrant in question "supports [] the conclusion that Coggins was storing contraband at the Bucknell address[.]" Suppression Court Opinion, 10/24/13, at 9-10. This does not affect our decision, as we are not bound by the suppression court's legal conclusions. **Thompson**, 93 A.3d at 484.

- 12 -