J-A14034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAWRENCE MAR | : | |
| | : | |
| Appellant | : | No. 1879 WDA 2019 |

Appeal from the Judgment of Sentence Entered November 18, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004393-2018

BEFORE:  MURRAY, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:             **FILED: AUGUST 16, 2021**

Lawrence Mar ("Mar") appeals from the judgment of sentence imposed after he was convicted of one count each of possession with intent to deliver, possession of a controlled substance, possession of drug paraphernalia, criminal conspiracy, possession of a weapon, and tampering with or fabricating physical evidence.[1]  After careful review, we reverse the judgment of sentence, and remand for further proceedings consistent with this Memorandum.

On November 1, 2017, police executed a search warrant on Mar's residence, located on Carnegie Street, in the Lawrenceville neighborhood of the City of Pittsburgh, Allegheny County.  The search warrant was based upon

---

[1] 35 P.S. § 780-113(a)(30), (a)(16), (a)(32); 18 Pa.C.S.A. §§ 903(a)(1), 907(b), 4910(1).

an Affidavit of probable cause (the "Affidavit") drafted and sworn by Pittsburgh Bureau of Police Officer Jedidiah Pollock. The Affidavit set forth Officer Pollock's qualifications and described several transactions involving Mar. The transactions involving Mar occurred on October 16, 2017, October 27, 2017, and October 31, 2017.

As to the October 16, 2017, transaction, the affiant swore that Detectives Miller, Zeltner, and Justin Simoni were conducting surveillance in the 5200 block of Natrona Way.[2] Detectives Miller and Zeltner observed Mar walk towards an unknown male. The two males met mid-block and conducted a hand-to-hand exchange. The unknown white male handed Mar an unknown amount of currency, and Mar handed the individual unknown objects. Affidavit at 3. Police followed the white male, ultimately stopping his vehicle and informing him of their belief that they had witnessed him engage in a narcotics transaction. *Id.* This individual, known as "Sally," informed police that although he/she[3] had purchased five stamp bags containing white powder, he/she threw them out of the window of the driver's side door because he/she had gotten nervous. *Id.* Police went to the area where Sally said he/she had discarded the packets and recovered the same. *Id.*

_____

[2] The full names of Detectives Miller and Zeitner are not clear from the record.

[3] The affidavit refers to "Sally" as "he/she."

On October 25, 2017, detectives conducted a "buy/walk" utilizing Sally. *Id.* at 4. Detective Miller handed Sally an amount of official funds and contacted the dealer, later identified as Mar, that he/she had been using for several months. Sally called the dealer, informed him of the amount of funds he/she had available, and whether they could meet to "do the deal." *Id.* Prior to the transaction, detectives set up surveillance at 5241 Keystone Street, 5243 Keystone Street,[4] and 5701 Carnegie Street. *Id.* Detectives observed Mar exit 5243 Keystone Street and walk to the location where Mar and Sally thereafter engaged in a drug transaction. *Id.* After the transaction was complete, Mar walked to 5107 Carnegie Street and entered the residence. *Id.*

Finally, on October 31, 2017, detectives again conducted a buy/walk with Sally. Detectives once again set up surveillance at the Keystone Street addresses and the Carnegie Street address. *Id.* Sally contacted the dealer, identified as Mar, by telephone and the dealer instructed Sally to go to the intersection of Dresden Way and Stanton Avenue. *Id.* Detectives observed Mar exit 5243 Keystone Street and walk towards Dresden Way. *Id.* Sally and Mar engaged in brief transaction, after which Mar walked directly to the residence at 5107 Carnegie Street. *Id.* Detective Simoni continued surveillance on the Carnegie Street address and observed Mar open the front

---

[4] Based upon his observations, the affiant believed that 5243 was a "trap house" wherein a group of dealers work together to sell drugs from a location where none of them live. *Id.* at 4.

door while on the telephone, look around, and close the door immediately after. *Id.* The affiant further stated that Mar lists his home address with the Pennsylvania Department of Transportation as 5107 Carnegie Street. Finally, the affiant located two Pittsburgh police reports wherein Mar listed the Carnegie Street address as his home address.

A search warrant was issued for 5107 Carnegie Street, and Mar was present while the premises were searched. N.T. (Suppression Hearing), 3/12/19, at 15. During the search, police recovered heroin and a firearm. *Id.* Thereafter, Mar was charged with the above-mentioned charges.

Prior to trial, Mar filed two Motions: a Motion to Suppress Evidence and Statements and a Motion to Disclose Informant Identity.[5] In the Motion to Suppress, Mar argued, *inter alia*, that the police lacked probable cause to justify the issuance of the warrant to search his residence. Motion to Suppress Evidence and Statements, 10/15/18, at 3 (unnumbered). The trial court held a hearing on the Motion to Suppress on March 3, 2019. During the hearing, Mar argued, *inter alia*, that the warrant failed to establish probable cause, because nothing in the Affidavit supported the conclusion that drugs would be

---

[5] Although the record reflects that Mar filed a Motion to Disclose Informant Identity, it is unclear from the certified record whether the trial court ruled on that Motion.

found at Mar's residence.[6]  N.T., 3/3/19, at 24-26.   The trial court denied

Mar's Motion to Suppress at the close of the hearing.  *Id.* at 28.

Following a bench trial, Mar was found guilty of all charges and

sentenced to an aggregate term of 42 months of probation.   Order of

Sentence, 11/18/19.  Mar filed a timely Notice of Appeal and a court-ordered

1925(b) Concise Statement of matters complained of on appeal.

Mar presents the following questions for our review:

I. Was the search of [Mar's] residence unconstitutional[,] where
the search warrant was issued based on information that failed
to establish probable cause?

II. Were [Mar's] incriminating statements rendered inadmissible
by the interrogating officer's violation of his ***Miranda*** rights?

Brief for Appellant at 4.

Our standard of review of the denial of a motion to suppress evidence

is as follows:

> [An appellate court's] standard of review in addressing a challenge
> to the denial of a suppression motion is limited to determining
> whether the suppression court's factual findings are supported by
> the record and whether the legal conclusions drawn from those
> facts are correct.  Because the Commonwealth prevailed before
> the suppression court, we may consider only the evidence of the
> Commonwealth and so much of the evidence for the defense as
> remains uncontradicted when read in the context of the record as
> a whole.   Where the suppression court's factual findings are
> supported by the record, [the appellate court is] bound by [those]

---

[6] Mar also argued that certain statements he made to police should be
suppressed because, *inter alia*, they were taken in violation his ***Miranda***
rights.  ***Miranda v. Arizona***, 384 U.S. 436 (1966).  The trial court denied this
portion of Mar's Motion as well.

findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to plenary review.

*Commonwealth v. Wright*, 224 A.3d 1104, 1108 (Pa. Super. 2019) (quoting

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa. Super. 2012)).

Mar first argues that the trial court erred when it denied his Motion to Suppress all evidence obtained pursuant to the warrant, because it lacked probable cause. Brief for Appellant at 11. Mar asserts that, "[d]espite the police officers' extensive surveillance of [Mar's] residence, the [A]ffidavit contained no averments that would support the conclusion that drugs and related items would be found there." *Id.* He further argues that probable cause that an individual has committed a crime does not give rise to probable cause to search that individual's home. *Id.* (citing *Commonwealth v. Kline*, 335 A.2d 361, 364 (Pa. Super. 1975) as standing for the proposition that even when the affidavit of probable cause tends to establish that a suspect is a drug dealer, the affidavit must corroborate the conclusion that the suspect kept drugs in his residence to justify the search of that residence).

Mar further argues that in this case, he was observed entering his residence after conducting only one of the alleged drug deals. Brief for Appellant at 13. Mar avers that there was no nexus between his residence

and any sort of criminal activity of any kind. **Id.** He points out that despite police surveillance of his residence,

> the only activity witnessed by officers consisted of [Mar] at some unspecified point, 'opening the front door [and] looking around outside while on the telephone[,] and then closing the door immediately after.' … The officer's surveillance of [Mar's] residence apparently yielded nothing more than such mundane, unsuspicious behavior underscores the lack of any averments linking his residence to criminal activity.

**Id.** at 14. Moreover, Mar highlights the fact that the Affidavit refers to the detectives' belief that Mar had engaged in "trapping," a practice wherein "a group of [drug] dealers participat[e] in a cooperative effort to sell drugs ***from a location where none of them lives***." **Id.** (citing the Affidavit (emphasis in Appellant's Brief)). Mar contends that pursuant to the Affidavit, the behavior that formed the basis for the search warrant was suggestive of efforts by Mar to avoid storing drugs at his home. Brief for Appellant at 14.

In its brief, the Commonwealth concedes that the trial court erred when it denied Mar's Motion to Suppress, because the Affidavit failed to establish a nexus between Mar's residence and the criminal activity observed by police. Brief for Commonwealth at 20. The Commonwealth acknowledges that Mar was not observed leaving his residence prior to any of the drug transactions, and prior to the transactions on October 25, 2017, and October 31, 2017, Mars was observed leaving a trap house. **Id.** at 23. After reviewing relevant case law, the Commonwealth acknowledges that,

> because of the lack of any other averments within the four corners of the [A]ffidavit that would support the conclusion that drugs

would be found in the location searched, the Commonwealth is forced to conclude that, pursuant to the case[ ]law of this jurisdiction, Mar's suppression [M]otion was likely improperly denied by the trial court.

*Id.*   We agree.

Our review of the Affidavit discloses no information establishing a nexus between the crimes committed and Mar's home.  Indeed, the affiant makes several references to his belief that Mar was using a trap house, specifically averring,

> Detective Miller knows based on his training and experience that this type of behavior is consistent with those who are sharing a building in order to sell drugs from the location.  This is typically referred to as a "Trap" house.  The activity of a group of dealers participating in a cooperative effort to sell drugs from **a location where none of them lives** is referred to as "Trapping."

Affidavit of Probable Cause, 11/1/17, at 4 (emphasis added).  Further on in the Affidavit he states that,

> [a]s mentioned above regarding the use of a "Trap" house[,] it is common for the participants to move regularly between multiple structures that are in close proximity to each[]other in an attempt to conduct counter surveillance as well as keep their product from staying in one location too long[,] thus making it difficult for law enforcement to pin the activity down to one location.

*Id.* at 5.  Finally, there is nothing in the Affidavit indicating that any drug transaction occurred in Mar's home, nor is there any indication that Mar left his residence and went directly to any of the drug transactions.  To the contrary, Mar was observed leaving the 5243 Keystone address prior to engaging in two of the transactions.  *Id.*  Because the Affidavit did not establish a nexus between the drug transactions and Mar's residence, the trial

court erred when it denied his Motion to Suppress.[7] ***See Commonwealth v. Way***, 492 A.2d 1151, 1153-54 (Pa. Super. 1985) (finding that where the affidavit alleged that the drug transaction occurred in a van, which police followed to the appellant's residence, the affidavit did not contain sufficient facts to establish probable cause that drugs would be found at the appellant's residence); ***Kline***, 335 A.2d at 364 (finding that an affidavit that included statements from buyers that the appellant went to his apartment to procure drugs was not sufficient to establish probable cause to search the apartment where the affidavit did not set forth how long the appellant was gone or what led the buyers to believe the appellant actually went to his apartment to procure the drugs). ***Cf. Commonwealth v. Kemp***, 195 A.3d 269 (Pa. Super. 2018) (finding probable cause existed to search the residence of the appellant where the affidavit established the appellant proceeded directly from his residence to the drug deal).

Judgment of Sentence vacated. Order denying Mar's Motion to Suppress reversed. Case remanded for further proceedings. Jurisdiction relinquished.

---

[7] In light of our disposition of Mar's first issue, we do not reach his second issue challenging the trial court's denial of the Motion to Suppress as it relates to the alleged violation of his rights under ***Miranda v. Arizona***, 384 U.S. 436 (1966).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/16/2021