J-S23043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN ANTONIO CAMACHO | : | No. 100 MDA 2022 |

Appeal from the Order Entered December 15, 2021
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0003420-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHARAYA NICOLE JONES | : | No. 101 MDA 2022 |

Appeal from the Order Entered December 15, 2021
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0003911-2021

BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:          **FILED: NOVEMBER 18, 2022**

In this consolidated case, the Commonwealth appeals from the orders that granted the suppression motions of both Jonathan Antonio Camacho and Sharaya Nicole Jones. On appeal, the Commonwealth chiefly contends that the lower court erred in granting the appellees' suppression motions because

_____

[*] Retired Senior Judge assigned to the Superior Court.

the affidavit of probable cause utilized in obtaining the search warrant contained legally sufficient personal observations of contraband. Specifically, the affidavit incorporated information from a police officer who, based on his training and experience, saw Camacho possess and smoke marijuana and then go into the residence that was the subject of the search warrant. We reverse the at-issue orders and remand for further proceedings.

Following the execution of the search warrant at 520 South Queen Street in York, Pennsylvania, Camacho was charged with possession with intent to deliver cocaine, possession of a small amount of marijuana, and conspiracy to commit possession with intent to deliver cocaine.[1] Similarly, Jones's charges included possession with intent to deliver cocaine and conspiracy to commit possession with intent to deliver cocaine.[2]

After both appellees filed their suppression motions, contending that the affidavit supporting the search warrant lacked probable cause, the court held a suppression hearing. Ultimately, the court granted both motions to suppress because, in conducting an inquiry limited to the four-corners of the affidavit of probable cause, it determined, *inter alia*, there to be no sufficient nexus between the allegations asserted in the affidavit and the residence that was thereafter searched. **See** Order, dated 12/15/21.

The affiant's name is Detective Vincent Monte, who, according to the

---

[1] **See** 35 P.S. § 780-113(a)(30); 35 P.S. 780-113(a)(31), and 18 Pa.C.S.A. § 903(a)(1), respectively.

[2] **See** 35 P.S. § 780-113(a)(30); and 18 Pa.C.S.A. § 903(a)(1), respectively.

affidavit, had been employed by the York City Police Department for ten years, performing hundreds of drug investigations in that span of time. The affidavit of probable cause states:

> Within the last month this officer received neighborhood complaints of a light skinned heavy set [male] suspected of selling drugs from 520 South Queen Street in York City. The complaints referenced various people meeting the male after he exited 520 South Queen Street. The male suspect would do a hand-to-hand transaction with the people he met then he would return to 520 South Queen Street. The male suspect was observed holding/count[ing] money after doing a hand-to-hand with the people that approached him.
>
> From surveillance on 520 South Queen Street over the last month I identified the male subject as Jonathan Camacho . . . . Camacho is known to me through multiple prior felony and misdemeanor drug investigations. Camacho is currently on York County Probation for a drug violation.
>
> I also discovered through Pennsylvania JNET that Sharaya Jones … has a listed address of 520 South Queen Street in York City. I know from prior investigations involving Camacho that Jones and Camacho are in a relationship together and have children together.
>
> While I conducted surveillance on 520 South Queen Street, and within the last 72 hours, I observed Camacho exit the rear of the residence and have in his possession a clear plastic sandwich bag containing a green leafy substance that I know based on my training and experience to be marijuana ([S]chedule I). Pennsylvania Medical Marijuana (MMJ) has rules for the original packaging of medical marijuana to include that it must be kept in the original package in which it is dispensed. The bag I observed in Camacho's possession did not have any labels/markings on it to indicate that it was medical marijuana.
>
> I watched Camacho take marijuana from the clear plastic bag and roll it into a cigar wrapper. Camacho placed the clear bag that still contained marijuana into his pocket, and then began to smoke the marijuana cigar. Medical [m]arijuana is not permitted to be

smoked/consumed in cigar/cigarette form in Pennsylvania. After lighting and smoking the marijuana cigar Camacho went back inside 520 South Queen Street with the bag of marijuana still in his pocket.

Camacho was convicted/plead[ed] guilty to felony drug offenses in York County in 2011, 2018, and 2019 all for crack cocaine ([S]chedule II).

Based on the information above I respectively request a search warrant be issued for 520 South Queen Street York City Pennsylvania to search for additional quantities of illegal marijuana and illegal narcotics as well as materials and items used to package, sell and possess illegal narcotics, such as plastic bags and scales; records or other documentation of past narcotics transactions, and cell phones utilized to facilitate narcotics transactions. I am also requesting that all persons present during the service of the warrant be searched. I am requesting all persons to be searched based on this officer's ten years of experience that narcotics can be easily concealed on a person and later destroyed.

Affidavit of Probable Cause, dated 6/27/21.

The text of the search warrant identified that it primarily sought seizure of marijuana "along with any other drugs or paraphernalia, packaging materials, scales, business records, official funds, firearms, ammunition, identification and other documentary and physical items relating to the possession, distribution and sale of narcotic and dangerous drugs." Application for Search Warrant and Authorization, dated 6/27/21.

In reaching its conclusion that suppression was warranted, the lower court found that

[b]ased on the totality of the circumstances, there were not enough facts to support probable cause to search the Queen Street house. There was no police corroboration of the neighborhood complaints regarding confirmation of identify or

hand-to-hand transactions by [Camacho] The [a]ffidavit did not contain any information regarding length of stay by [Camacho] at the Queen Street house. The amount of marijuana, only seen stored on [Camacho's] person, was not enough to show more would be present within the Queen Street house. Therefore, [the lower] court granted [appellees' motions], finding there was not probable cause within the four concerns of the [a]ffidavit for the search and seizure inside the Queen Street house.

Suppression Court Opinion, dated 3/25/22, at 8-9 (citations omitted).

Correspondingly, the Commonwealth filed a timely notice of appeal, inclusive of a certification pursuant to Pennsylvania Rule of Appellate Procedure 311(d) stating that the lower court's determination would terminate or substantially handicap the prosecution of the appellees. Thereafter, the relevant parties complied with their obligations under Pennsylvania Rule of Appellate Procedure 1925. As such, this matter is ripe for review.

On appeal, the Commonwealth asks:

1. Did the suppression court err in finding that the application for a search warrant lacked probable cause within its four corners where the officer directly observed Camacho visibly enter into the location to be searched while in possession of marijuana and marijuana paraphernalia, and, in addition to the officer's own observations, the officer had received numerous reports of Camacho engaging in hand-to-hand transactions outside the residence to be searched?

Commonwealth's Brief, at 4.

As this is a Commonwealth appeal from a suppression order, we apply the corresponding standard of review:

[We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. As long as there is some evidence to support them, we are bound by the

- 5 -

suppression court's findings of fact. Most importantly, we are not at liberty to reject a finding of fact which is based on credibility.

***Commonwealth v. Goldsborough***, 31 A.3d 299, 305 (Pa. Super. 2011) (citation omitted) (bracket in original). However, the lower court's conclusions of law are not binding on this Court, as it is this Court's duty to ascertain whether the lower court correctly applied the law to the facts. ***See Commonwealth v. Keller***, 823 A.2d 1004, 1008 (Pa. Super. 2003) (citation omitted). While our review is limited to the evidentiary record that was created at the suppression hearing, ***see In re L.J.***, 79 A.3d 1073, 1087 (Pa. 2013), it does not appear that anything evidentiary other than the affidavit of probable cause and search warrant were provided to the suppression court in the present matter.

The burden is on the affiant to demonstrate that the warrant's execution will likely lead to the recovery of contraband or evidence of a crime. ***See Commonwealth v. Janda***, 14 A.3d 147, 157 (Pa. Super. 2011) (citation omitted). Relatedly, in making its probable cause determination for the issuance of a warrant, a magistrate may not consider any evidence outside the four-corners of the affidavit. ***See Commonwealth v. Sharp***, 683 A.2d 1219, 1223 (Pa. Super. 1996) (citations omitted). As to what constitutes probable cause:

> The legal principles applicable to a review of the sufficiency of probable cause affidavits are well settled. Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search.

The standard for evaluating a search warrant is a 'totality of the circumstances' test as set forth in **Illinois v. Gates**, 462 U.S. 213, … (1983), and adopted in **Commonwealth v. Gray**, 503 A.2d 921 ([Pa.] 1985). A magistrate is to make a 'practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' The information offered to establish probable cause must be viewed in a common sense, non-technical manner. Probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause.

**Commonwealth v. Ryerson**, 817 A.2d 510, 513-14 (Pa. Super. 2003) (citation and internal parallel citations omitted). "The duty of a court reviewing [a magistrate's decision] is to ensure that the magistrate had a substantial basis for concluding that probable cause existed." **Commonwealth v. Gindlesperger**, 706 A.2d 1216, 1219 (Pa. Super. 1997); **see also Commonwealth v. Leed**, 186 A.3d 405, 413 (Pa. 2018) (requiring deference from reviewing courts when analyzing a magistrate's probable cause determination).

Here, the Commonwealth concedes that "the seemingly anonymous reports of drug sales out of the residence [described in the affidavit] would not have provided the requisite probable cause by themselves[.]" Commonwealth's Brief, at 12-13. Despite that concession, "Detective Monte saw … Camacho exit the residence, roll and smoke a marijuana cigar, return a portion of marijuana still in the bag to his pocket, and reenter the residence." **Id**., at 11; **see also** 35 P.S. § 10231.304(b)(1) (establishing that it is unlawful

to smoke medical marijuana); ***Commonwealth v. Barr***, 266 A.3d 25, 41 (Pa. 2021) (stating that the Controlled Substance, Drug, Device and Cosmetic Act, ***see*** 35 P.S. §§ 780-101-133, "still renders possession of marijuana illegal for those not qualified under the [Medical Marijuana Act, ***see*** 35 P.S. §§ 10231.101-10231.2110]").

When distilled down, the question before this Court is whether an affiant's personal observation of a specific illicit act, i.e., the unlawful possession and attendant consumption of marijuana, can provide probable cause in support of a search warrant, when juxtaposed against these particular facts. As noted, *supra*, the Detective described Camacho's movements as having exited the at-issue residence and then, after smoking marijuana in short proximity, returning to the inside of the same residence with some amount of contraband still on him. Moreover, this observation occurred within seventy-two hours of when the search warrant was sought.

We agree with the premise that "[p]robable cause to believe that a man has committed a crime on the street does not *necessarily* give rise to probable cause to search his home." ***Commonwealth v. Kline***, 335 A.2d 361, 364 (Pa. Super. 1975) (emphasis added). In addition, the affidavit of probable cause must establish a "substantial nexus" between the criminal activity or contraband sought and the place to be searched. ***Id***.

However, as evidenced by the text of the affidavit of probable cause, Detective Monte, through knowledge obtained in his prior investigations,

asserted that Camacho had more than a fleeting or temporary connection with the 520 South Queen Street property. Specifically, the Detective wrote that Camacho and Jones, the individual whose name was attributable to the property, were in a relationship together and had children together, implying, at a minimum, continual contacts with the location.

The lower court, in its opinion, emphasizes that after the execution of the search warrant, Camacho was only found possessing a small amount of marijuana. *See* Suppression Court Opinion, dated 3/25/22, at 8. It then states that the marijuana was always on Camacho's person and "is never attributed to the house." *Id*. (citation to suppression hearing omitted). The court concludes: "[b]ecause the small amount of marijuana was in [Camacho's] pocket, the belief more would be in the place to be searched, the Queen Street house, is not reasonable." *Id*. (citation omitted). Stated differently, "[t]he amount of marijuana, only seen stored on [Camacho's] person, was not enough to show more would be present within the Queen Street house." *Id*., at 9.

We disagree with the lower court's analysis of the reasonability underpinning the magistrate's probable cause determination. "The totality of the circumstances test is satisfied where the police officers have a reasonable belief that the items to be seized are related to criminal conduct and that those items are presently located in the place to be searched." *Commonwealth v. Waltson*, 724 A..2d 289, 292 (Pa. 1998) (citation omitted). Furthermore, in

defining what can be searched, "the scope of a search warrant is limited by the items to be seized and where they may be found and not to a particular location within those premises." *Id*. (citation omitted).

Here, Detective Monte saw Camacho exit the South Queen Street residence, noted that he possessed and consumed a leafy green substance known to the Detective as marijuana that, in its observed form, is illegal, and then watched Camacho proceed back into the same residence with the contraband. Based on these events, it was reasonable for the Detective to believe that, at a minimum, marijuana and related materials would be found inside of the South Queen Street property given the high likelihood that the marijuana baggie would not remain in Camacho's pocket in perpetuity. In other words, because the Detective emphasized Camacho's connection to the South Queen Street location and sought the search warrant within seventy-two hours of observing him smoking the marijuana, it was reasonable to think that, based on the unbroken chain of Camacho reentering the house with contraband on him, some amount of marijuana would be found there.

While the lower court correctly states that the unverified and unsubstantiated community complaints against the South Queen Street house that were described in the affidavit of probable cause would not have been sufficient, Detective Monte's personal observation of criminal activity in the form of Camacho possessing an illegal substance, when considered in tandem with his movements directly back into the residence, meant that there was a

nexus between the illegal activity witnessed outside and the place that was requested to be searched as well as a corresponding high probability criminal activity, in the form of contraband, would be discovered via the execution of that search warrant. Governed by our standard of review, which requires both deference towards the magistrate as well as consideration of the affidavit of probable cause in a common sense and nontechnical manner, the magistrate's finding of probable cause was supported by the affidavit's contents, and it was not in error for the search warrant to be issued.

Accordingly, we determine that the lower court erred in granting the appellees' motions to suppress. As such, the orders of the lower court that suppressed the evidence uncovered from the search are reversed, and the matter is remanded for further proceedings.

Orders reversed. Cases remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2022